CINCINNATI INSURANCE COMPANY, APPELLANT, *v.*
FIRST NATIONAL BANK OF AKRON ET AL., APPELLEES.

[Cite as Cincinnati Ins. Co. v. First National Bank (1980), 63 Ohio St. 2d 220.]

(No. 79-887—Decided July 23, 1980.)

*Messrs. McNamara & McNamara* and *Mr. Dennis D. Liston,* for appellant.

*Brouse & McDowell Co., L.P.A.,* and *Mr. John A. Schwemler,* for appellee First National Bank.

*Messrs. Calfee, Halter & Griswold, Mr. Frederick W. Assini* and *Mr. Michael E. Brittain,* for appellee Village Bank.

LOCHER, J.  The primary issue raised in this cause concerns an interpretation of the Ohio Uniform Commercial Code as it applies to the facts of this case. This interpretation revolves around a reading of R. C. 1304.24(A), which provides: "As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." All the parties agree, as did the Court of Appeals, that the three checks were not "properly payable" since they were not endorsed by one of the named payees, Allied. This conclusion is mandated by R. C. 1303.15, which provides, in part:

"An instrument payable to the order of two or more persons:

"* * *

"(B) if not in the alternative is payable to all of them and may be negotiated, discharged, or enforced only by all of them."[4]

The Court of Appeals determined, however, that, even though the items were not "properly payable," actual damages, pursuant to the standard set out in R. C. 1304.03(E),[5] must be proven prior to granting any relief.

Our analysis begins with the settled premise that the relationship between bank and customer is that of debtor and creditor, based upon a contractual undertaking. *Speroff* v. *First-Central Trust Co.* (1948), 149 Ohio St. 415. We agree with the following statement, regarding the result of this relationship, by the Utah Supreme Court:

---

[4] R. C. 1303.01(A)(2) defines an "order" as "a direction to pay and must be more than an authorization or request. It must identify the person to pay with reasonable certainty. It may be addressed to one or more such persons jointly or in the alternative but not in succession."

[5] R. C. 1304.03(E) provides: "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence."

"***The nature of a check is an order by its maker to his banker or depository that the face amount be paid to the payees he designates, and it is notice to anyone accepting the check that the signatures of all payees are required. This requirement is just as binding on the drawee bank as upon anyone else." *Pacific Metals Co.* v. *Tracy-Collins Bank & Trust Co.* (1968), 21 Utah 2d 400, 403, 446 P. 2d 303. Accord, *University National Bank* v. *Wolfe* (1977), 279 Md. 512, 369 A. 2d 570; see 9 Ohio Jurisprudence 3d 180-181, Banks, Section 233.

This contractual relationship between bank and customer remained unchanged with the adoption of the Uniform Commercial Code in Ohio. See R. C. 1301.03; *Stone & Webster Engineering Corp.* v. *First National Bank & Trust Co. of Greenfield* (1962), 345 Mass. 1, 184 N.E. 2d 358. R. C. 1304.24, in essence, codifies this relationship by requiring the bank to obey the explicit orders of its customer prior to making payment on an item. Thus, if appellees had examined the checks to verify that each of the named payees had appropriately endorsed the checks, the banks would have known that the checks were not "properly payable" under R. C. 1304.24. Since appellees failed in this regard, they breached the contract with their customer. Thus, by the clear implication of R. C. 1304.24, if the item is not "properly payable," the bank[6] is required to recredit the customer's account.[7] This approach is one recognized by authorities on the Uniform Commercial Code, as well as case law from other jurisdictions.

---

[6] Although R. C. 1304.24 speaks of a "bank," the official comment to the section makes clear that the section refers to the payor bank.

[7] This result may appear harsh since the bank has the initial loss while the customer enjoys a windfall gain when his account is recredited. We are cognizant, however, that the Uniform Commercial Code is a sophisticated legislative enactment which, when properly invoked, shifts the ultimate loss to the proper party or parties.

For example, R. C. 1304.30 grants subrogation rights to the payor bank "***to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item***." R. C. 1304.30 can be invoked by a bank when a customer complains that a payment of an item was not "properly payable." White & Summers, Uniform Commercial Code, 580, Section 17-6.

Who must bear or share this ultimate loss is not before us in this cause. The matter must be remanded for a determination of various cross-claims and counterclaims which may shift the loss from the payor bank.

White & Summers, Uniform Commercial Code, 558, Section 17-3; *W. R. Grimshaw Co.* v. *First National Bank & Trust Co. of Tulsa* (Okla. App. 1976), 18 U.C.C. Rep. 734; *Ford Motor Credit Co.* v. *United Services Automobile Assn.* (N.Y. Civ. Ct. 1972), 11 U.C.C. Rep. 361; *Wiley* v. *Manufacturers' Hanover Trust Co.* (N.Y. Sup. Ct. 1969), 6 U.C.C. Rep. 1083; *Feldman Construction Co.* v. *Union Bank* (1972), 28 Cal. App. 3d 731, 104 Cal. Rptr. 912.

R. C. 1301.06(A), which governs construction of the entire Uniform Commercial Code, provides: "The remedies provided * * * shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * *." Our holding, that R. C. 1304.24 requires the bank to recredit the customer's account if an item is not "properly payable," carries out the mandate of R. C. 1301.06. If the bank had obeyed the orders of Dillon, the checks would not have been paid without Allied's endorsement. We are now putting appellant, as assignee of the drawer, in the position it would have been in if the bank had fully performed.

The trial court's and Court of Appeals' reliance on R. C. 1304.03(E) was misplaced. That section's specific reference to "ordinary care" manifests an intent that it relate only to a negligence-type action and not one based on the duty imposed upon the bank under R. C. 1304.24 to only pay "properly payable" items of its customer.

Thus, appellant, as assignee of the drawer-customer, Dillon, is entitled to relief under R. C. 1304.24, since the checks (exhibits 17 and 19) were not "properly payable" pursuant to the orders of Dillon, due to the missing endorsements of a payee.

Appellant contends that it is also entitled to relief as assignee of Allied as payee of the checks. The record demonstrates, however, that the assignment from Allied to appellant clearly applied only to the West contract and not to the East contract. Exhibit 18 is the only check that dealt with the West contract. Appellant was granted full relief on that check in the Court of Appeals. Thus, we need not decide whether appellant may recover as an assignee of a payee.

Besides the questions regarding the Uniform Commercial Code, appellant raises several other propositions of law. First, appellant contends that the courts below erred in the characterization of the testimony of its witness, Alden D. Jenkins. Appellant argues that Jenkins' testimony was for the purpose of explaining ambiguous terms of a writing and, therefore, was admissible in that it involved the parol evidence rule. We agree with the Court of Appeals' determination that the testimony in question dealt with facts not in the witness' area of knowledge. This determination does not bring into play the parol evidence rule, and, therefore, this proposition of law is rejected.

The Court of Appeals awarded interest to appellant on exhibit 18 from December 21, 1976. Appellant argues that interest should have been granted from the date on which the funds were improperly deducted from the drawer's account. Generally, an award of interest is in the sound discretion of the court. *Hobson* v. *Eaton* (N.D. Ohio, 1970), 327 F. Supp. 74, 77. Finding no abuse of that discretion, we affirm the Court of Appeals on this issue.

Appellant contends further that a bank may not earn and retain profits on funds which it improperly deducts from a customer's account. Since the banks were not guilty of any willful act in paying the checks, appellant's proposition is not well taken. See *Tracy* v. *Athens & Pomeroy Coal & Land Co.* (1926), 115 Ohio St. 298.

Lastly, appellant requests attorney fees. There is no specific statutory provision sanctioning the award of attorney fees in this matter, nor was there any malice on the part of the banks in this cause. See *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177. Thus, an award of attorney fees is improper in this action.

For the foregoing reasons, the judgment of the Court of Appeals is reversed in part and affirmed in part. The cause is remanded for further proceedings upon counterclaims and cross-claims preserved in the trial court pending appeal.

*Judgment accordingly.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and HOLMES, JJ., concur.