Defendant-appellant Bahman Guyuron, M.D. appeals from the trial court judgment finding him liable to plaintiff-appellee Persky, Shapiro, Salim, Esper, Arnoff Nolfi Co., L.P.A. for conversion of dental office equipment in which plaintiff was found to have a recorded security interest superior to defendant's consensual landlord's lien. Defendant contends the trial court erred in failing to make findings of fact and conclusions of law requested by defendant. Defendant also asserts the judgment is contrary to law and against the manifest weight of the evidence. Plaintiff cross-appeals from the award of prejudgment interest. We find no error and affirm the direct appeal and overrule the cross-appeal.
On July 27, 1973, Brainard Place Associates, Ltd., Lessor, entered into a lease of certain space at Suite 500 of Brainard Place, a commercial building located at 29000 Cedar Road, Lyndhurst, Ohio, to Kwait Cohen, DDS, Inc., d.b.a. Dental Associates of Brainard Place, Lessee. Paragraph 11(f) of the 1973 lease stated as follows:
 It is agreed that all of the goods, chattels, fixtures and other personal property belonging to the Lessee which are or may be put into the premises during said term, whether exempt or not from sale under execution or attachment, shall at all times be bound with a lien in favor of the Lessor and shall be chargeable for all rents hereunder and for the fulfillment of the other covenants and agreements herein contained provided, however, that said lien shall be enforceable by Lessor only upon the occurrence of an event herein set forth in this subparagraph (f). In the event that the Lessee shall have abandoned said property, or in the event of any default of the Lessee hereunder, the Lessor shall have the right to sell all or any part of said property at a public or private sale * * *.
Prior to 1986, defendant succeeded in interest as Lessor to Brainard Place Associates, Ltd. and continued to operate the subject commercial property as Bahman Guyuron, M.D., d.b.a. Brainard Place Associates.
On November 3, 1989 and July 9, 1992, Dental Associates of Brainard Place, Inc. entered into extensions and amendments of the 1973 Lease Agreement with Brainard Place Associates, which carried forward the consensual lien provision of Paragraph 11(f).
On March 4, 1994, another amendment to the subject lease was made by which defendant acknowledged the assignment of Dental Associates of Brainard Place's interest in the lease and all extensions of same to Robert E. Block, D.M.D., Inc., d.b.a. The Dental Group. Under this amendment, the term of the lease was extended again through December 31, 1997.
Plaintiff, a law firm, represented both Dental Associates of Brainard Place and Dr. Block from the time of the original 1973 lease through the March 4, 1994 amendment. In the fall of 1996, Dr. Block notified defendant of his intention to abandon Suite 500 as of the end of September 1996, and he ceased the conduct of his dental practice on the premises and vacated same by the end of September. When Dr. Block vacated the subject premises, he abandoned a large amount of furniture, fixtures and dental equipment, the majority of which was attached to the floors, walls and ceilings and was connected with plumbing and electrical fixtures, the removal of which would damage the premises.
Defendant subsequently took legal action against Dr. Block and obtained judgments in the sum of $135,998, plus interest at the legal rate, for unpaid rent in a case captioned Bahman Guyuron, M.D., et al. v. Robert E. Block, D.M.D., Inc. (Cuyahoga C.P. No. 320944).
By letter of December 18, 1996, defendant received a notice from plaintiff asserting that plaintiff was a secured creditor of Robert E. Block, D.M.D. and demanding an immediate right to possession of all dental equipment located in the suite formerly occupied by Dr. Block. The letter further alleged that plaintiff had a third-party who was ready, willing and able to purchase the equipment. In response, on December 20, 1996, by letter request, defendant's counsel sought documents substantiating and identifying plaintiff's interest in specific equipment, any and all U.C.C. filings with the County Recorder, specific evidence of the third party and the price being offered. That same day, plaintiff forwarded a copy of a U.C.C.-2 Financing Statement, evidencing its security interest in the property located in the suite. The Financing Statement covered the personal property in Suite 500 and was filed with the Secretary of State on February 27, 1995. The security interest was to secure the purchase money mortgage that Dr. Block gave to plaintiff for the equipment.
On January 28, 1997, plaintiff sent another letter to defendant's counsel, along with an enclosed letter from Daniel A. Glick, D.D.S. which stated that since November 1, 1996, Dr. Glick had been planning to buy the eight (8) complete Cox Operatories that Dr. Block had for sale at his Brainard Medical Building location. The letter further stated: If I don't have the units in my possession by February 1, 1997, I will have to purchase the units elsewhere.
On January 29, 1997, defendant's counsel responded to the January 28, 1997 letter informing plaintiff that he still had no information as to (1) the specific itemization of assets which you intend to remove from the premises, (2) the specific itemization of assets that Dr. Glick is intending to purchase, (3) the price that Dr. Glick is offering for those enumerated items which are listed, (4) any information relative to the fair market value of those assets (i.e., have they been appraised), (5) the amount of your claim as it presently stands, with credit given for any monies already paid to reduce same, and (6) a list of any other secured creditors which you are aware of. Defendant's counsel further enclosed Paragraph 11(f) of the original 1973 lease which provided for the express landlord's consensual lien on the subject equipment. The letter concluded by indicating that, once the requested information was received, the sale might be allowed on the condition that the funds realized therefrom be escrowed, in an interest-bearing account, until such time that the parties can conclude an agreement in respect thereto or, if necessary, obtain a court determination, by declaratory judgment or otherwise, as to the entitlement of said proceeds.
On March 25, 1997, plaintiff filed the instant action for declaratory judgment and damages alleging that defendant had willfully, intentionally, and wrongfully retained possession of, and converted, plaintiff's collateral. On April 15, 1998, plaintiff filed a motion for partial summary judgment seeking to establish liability of defendant on its conversion claim. In its motion, plaintiff also sought an order directing defendant to permit plaintiff access to the suite for purposes of removing its collateral. On May 19, 1998, defendant filed his brief in opposition. On June 23, 1998, the trial court granted plaintiff's motion for partial summary judgment. The trial court stated in its Journal Entry:
 Pltf. Persky, Shapiro, Salim, Esper, Arnoff Nolfi Co., L.P.A., Motion for Partial Summary Judgment with Brief in Support is hereby granted. The court hereby finds that when, as in the case at bar, a landlord's lien is created by agreement, Ohio Rev. Code 1309 applies to the security interest created.
 Therefore, Section 1309 to 1309.50 of the Revised Code apply to consensual landlord's liens. Consensual landlord's liens must be perfected pursuant to Chapter 1309, which in turn governs any priority dispute between consensual landlord's liens and other security interests. See Walcher Grain Co. v. Lawrence Slane, 1987 Ohio App. Lexis 6169 (6th Dist).
 Thus, because Pltf. herein perfected its security interest in the subject collateral, and Deft. herein did not, partial judgment is hereby rendered in favor of Pltf. on the issue of liability on its conversion claim.
On February 1, 1999, plaintiff sent a letter to defendant's counsel demanding immediate delivery of $2,650 in proceeds from defendant's September 1998 sale of nitrous oxide tanks that were located in the suite. These funds were then held by defendant in escrow pending further instructions. In the letter, plaintiff expressed that the trial court's June 18, 1998 order unequivocally held that plaintiff was the owner of the equipment and that defendant had unlawfully converted that equipment. Plaintiff also asserted that it was entitled to the proceeds and that they were being wrongfully held in escrow.
Thereafter, the parties waived their right to a jury trial, and a bench trial was commenced on April 29, 1999. On October 13, 1999, the trial court entered judgment in favor of plaintiff against defendant in the total sum of $14,150 ($11,500 value of the subject equipment plus $2,650 held in escrow).
On October 26, 1999, defendant filed a motion for a new trial, which was denied on November 4, 1999. On October 26, 1999, defendant also filed a request for findings of fact and conclusions of law, to which no response has been made by the court. From the court's judgments, this timely appeal ensued.
We will address defendant's assignments of error in the order presented.
 I. THE TRIAL COURT COMMITTED ERROR BY FAILING TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW AS REQUESTED BY DEFENDANT AND, AS SUCH THERE IS NO FINAL APPEALABLE ORDER IN THIS CASE.
In his first assignment of error, defendant asserts that his request for findings of fact and conclusions of law was filed in accordance with Civ.R. 52, and therefore, the trial court had a mandatory duty to issue such findings and conclusions. We disagree.
Civ.R. 52 provides:
 When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.
Following the above rule, this Court in Newman v. Industrial Glove Cleaning Co. (1986), 34 Ohio App.3d 41, paragraph one of the syllabus, held:
 In a case tried by the court without a jury, Civ.R. 52 provides, inter alia, that a party may request written findings of fact and conclusions of law not later than seven days after that party was given notice of the court's announcement of its decision, i.e., not later than seven days after journalization of the judgment if the decision was not announced in open court at an earlier time.
It has consistently been held that the seven-day limit under Civ.R. 52 for requesting findings of fact and conclusions of law runs from the date of journalization of the court's decision. Id., citing Professional Business Systems, Inc. v. Koba (May 5, 1983), Cuyahoga App. No. 45406, unreported at 7; Ingle v. Ingle (Nov. 16, 1994), Clark App. No. 3096, unreported; Haller v. Haller (June 20, 1991), Cuyahoga App. No. 58739, unreported; Jandecka v. Riley (Mar. 31, 1988), Cuyahoga App. No. 54477.
In the instant case, the record reflects that the trial court journalized its decision on October 13, 1999. Thus, pursuant to Civ.R. 52, defendant then had seven days, or until October 21, 1999, to timely file his request for findings. Because defendant did not file his request until October 26, 1999, his request for findings was not timely filed and the trial court did not err in not entering them.
Assignment of Error I is overruled.
II. THE JUDGMENT OF THE TRIAL COURT WAS CONTRARY TO LAW.
In his second assignment of error, defendant asserts that his consensual landlord's lien should have been afforded priority over plaintiff's security interest because R.C. 1309.01, et seq. does not apply to the creation or transfer of an interest in or lien on real estate. In its June 18, 1998 summary judgment order, the trial court determined that plaintiff's security interest prevailed. Therefore, we will assume this assignment of error attacks that order.
Appellate review of summary judgments is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585. The Ohio Supreme Court recently restated the appropriate test in Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70 as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E). Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
Defendant claims that Article 9 of the Uniform Commercial Code is inapplicable in this case because it does not apply to the creation or transfer of a security interest in real estate. However, this action was brought to recover the personal property, including the dental equipment, located in the suite formerly occupied by Dr. Block. Because defendant is claiming a security interest in such personal property, we must apply the U.C.C. (R.C. 1309.01, et seq.) to determine which party's security interest takes priority.
We agree with the trial court's finding that plaintiff's purchase money security interest takes priority. In its summary judgment order, the trial court correctly relied on Walcher Grain Co. v. Slane (Mar. 20, 1987), Huron App. No. H-86-3, unreported, which states:
 Conversely, consensual landlord's liens are not excluded from Chapter 1309 coverage. R.C. 1309.02(C) specifically provides:
 The application of sections 1309.01 to 1309.50 of the Revised Code to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which sections 1309.01 to 1309.50 of the Revised Code do not apply. See Comment 4.
 In other words, when a landlord's lien is created by agreement, Chapter 1309 applies to the security interest created even though it does not apply to the subject of the security interest. Therefore, section[s] 1309.01 to 1309.50 of the Revised Code apply to consensual landlord's liens. Consensual landlord's liens must be perfected pursuant to Chapter 1309 which in turn governs any priority dispute between consensual landlord's liens and other security interests.
The priority of interests between two or more creditors in the same collateral is controlled by R.C. 1309.20(A) which states: " * * * an unperfected security interest is subordinate to the rights of * * * a person who becomes a lien creditor before the security interest is perfected." R.C. 1309.20(C) defines a lien creditor as "a creditor who has acquired a lien on the property involved by attachment, levy or the like * * *." A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Pursuant to R.C. 1309.21 and R.C. 1309.38, a security interest in collateral is perfected when a financing statement is filed with the office of the Secretary of State.
In the instant case, plaintiff perfected its security interest in the dental equipment on February 27, 1995, when it filed a financing statement covering the property with the Secretary of State in accordance with R.C. 1309.21 and R.C. 1309.38. As stated above, consensual landlord's liens must also be perfected pursuant to Chapter 1309. Therefore, because defendant failed to perfect its lien, plaintiff's perfected security interest takes priority over defendant's unperfected interest.
Defendant further asserts that his consensual landlord's lien should have been given priority because plaintiff knew or should have known of defendant's lien that was expressly set forth in Paragraph 11(f) of the original 1973 lease. Defendant claims that because plaintiff represented the lessee and the successive lessees when the amendments and extensions of the 1973 lease were made, plaintiff knew of the existing consensual landlord's lien. However, plaintiff has failed to present any admissible evidence to establish plaintiff's alleged knowledge of the lien.
We further agree with plaintiff's claim that, even assuming arguendothat defendant possessed a perfected security interest in the collateral, such interest did not attach until long after plaintiff perfected its interest. Under R.C. 1309.21(A)(1), a party with a secured interest in collateral need not file a financing statement to perfect its interest if it is in possession of the collateral.
Paragraph 11(f) of the 1973 lease provided that defendant's security interest in the dental equipment would be enforceable only when the lessee abandoned the property or defaulted on the lease. The record reflects that plaintiff perfected its security interest on February 27, 1995. However, Dr. Block did not abandon the property and defendant did not take possession of the collateral until September 1996. Thus, plaintiff's security interest was perfected first and still takes priority over defendant's lien.
Defendant further asserts that the trial court should not have found him liable for conversion. We disagree.
This Court set forth the requisite elements of conversion as follows in Tabar v. Charlie's Towing Serv., Inc. (1994), 97 Ohio App.3d 423,427-428:
 Conversion is the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner. Bench Billboard Co. v. Columbus (1989), 63 Ohio App.3d 421, 579 N.E.2d 240; Ohio Tel. Equip. Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, 24 OBR 160, 493 N.E.2d 289. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Id. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Brumm v. McDonald Co. Securities, Inc. (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.
As discussed above, the evidence established that plaintiff possessed a perfected security interest in the dental equipment located in Dr. Block's former suite located in defendant's building. In September 1996, Dr. Block abandoned the suite leaving the equipment and in November 1996, defendant changed the locks on the suite. On December 18, 1996, plaintiff sent a letter to defendant claiming that plaintiff was a secured creditor of Dr. Block and demanding immediate possession of the dental equipment located in the suite. Thereafter, plaintiff repeatedly demanded access to the suite to remove its collateral but defendant refused access.
Based on these facts, we find that there was sufficient evidence to support the trial court's finding that defendant is liable for conversion. Accordingly, the trial court did not err in so finding.
Assignment of Error II is overruled.
 III. THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error, defendant asserts that the trial court's $11,500 damage award was against the manifest weight of the evidence. Defendant asserts that plaintiff failed to present sufficient evidence to support this award, and therefore, the judgment should be reversed and no damages awarded.
In determining whether a trial court's judgment is against the manifest weight of the evidence, we are guided by the principles stated in Arnett v. Midwestern Ent., Inc. (1994), 95 Ohio App.3d 429,431:
 We initially note that a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. In addition, under a manifest weight of the evidence test, the court of appeals is guided by the presumption that the findings of the trial court are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio S.3d 77, 80 10 OBR 408, 411, 461 N.E.2d 1273, 1276. * * *
In Seaso ns Coal, supra, at 80, the Supreme Court of Ohio discussed the rationale behind the practice of giving deference to the findings of the factfinder:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *."
The measure of damages in a conversion action is the value of the property at the time it was converted. Tabar, supra, at 428. An award of damages must be shown with a reasonable degree of certainty and in some manner other than by mere speculation, conjecture, or surmise. See Williams v. Ohio Expositions Comm. (Mar. 31, 1988), Franklin App. No. 87AP-733, unreported; Pingue v. Pingue (Nov. 6, 1995), Delaware App. No. 95CAF02006, unreported. However, once a party has established a right to damages, that right will not be denied because the damages are incapable of being calculated with mathematical certainty. Pennant Molding, Inc. v. C J Trucking Co. (1983), 11 Ohio App.3d 248, 252.
Defendant correctly asserts that plaintiff must establish his damages by a reasonable degree of certainty. In Broadvue Motors, Inc. v. Chief of Police (Sept. 30, 1999), Cuyahoga App. No. 74808, unreported, this Court stated:
 The plaintiff bears the burden of proving damages. Damages cannot be awarded if the plaintiff fails to meet this burden by presenting adequate proof. Henderson v. Spring Run Allotment (1994), 99 Ohio App.3d 633, 651 N.E.2d 489. Evidence of damages must be shown with a reasonable degree of certainty. A plaintiff may not recover speculative damages. Glenwood Homes, LTD. v. State Auto Mut. Ins. Co. (Oct. 1, 1998), Cuyahoga App. No. 72856, unreported. A plaintiff must prove the extent of his damages to be entitled to compensation. Arko-Plastic v. Drake Industries (1996), 115 Ohio App.3d 221, 685 N.E.2d 246.
In the instant case, plaintiff presented the Purchase Agreement between Dr. Block and plaintiff dated February 9, 1995, which included valuations of the Cox Operatories that Dr. Glick attempted to purchase. These valuations estimated the value of the operatories at $13,675. Plaintiff's attorney, Mr. Waltz, testified that he was aware of multiple individuals, including Mr. Glick, who where willing to pay $11,500 for the equipment. During this testimony, Mr. Waltz referred to a November 1, 1996 letter from Bernard I. Agin in which he states that Dr. Block had found someone willing to purchase two vacuum pumps for $4,500 and another willing to purchase two dental units for $3,500 each. Mr. Glick testified that the eight operatories were worth between $8,000 and $10,000 each. Paul Shapiro, plaintiff's president, also testified that there was another dentist who was willing to pay over $11,000 for the equipment.
Based on this record, we find that there was sufficient, competent, credible evidence to support the trial court's finding that the value of the equipment at the time of the conversion was $11,500. There was also sufficient evidence to support the award of $2,650 held by defendant in escrow. This evidence clearly did not amount to mere speculation, conjecture, or surmise. Therefore, we cannot say that the trial court's damage award was against the manifest weight of the evidence.
Assignment of Error III is overruled.
Judgment affirmed.
 CROSS-APPEAL I. THE TRIAL COURT ERRED IN FAILING TO AWARD FULL PREJUDGMENT INTEREST ON THE JUDGMENT.
In its cross-assignment of error, plaintiff asserts that it is entitled to prejudgment interest on the entire $14,150 from the date of the conversion, and therefore, the trial court erred in awarding prejudgment interest only on the $2,650 held in escrow. Defendant contends that plaintiff is not entitled to any interest because it failed to make a written demand for same. The issue is not resolved without difficulty.
Although, generally, Ohio common law did not allow prejudgment interest in civil actions based on tortious conduct, an action in conversion was a well-established exception to the rule. Moore v. Univ. of Cincinnati Hosp. (1990), 67 Ohio App.3d 152, 154. In Lyle v. Durham (1984), 16 Ohio App.3d 1, the court discussed the common law rule for prejudgment interest from the date of conversion of a wedding band as follows at 3:
 Plaintiff's suit was in conversion, and the trial court awarded plaintiff interest from the time of the filing of the complaint. The general rule in conversion actions is that the plaintiff is awarded interest from an even earlier point, the time of conversion. Booth v. Cincinnati Finance Co. (1923), 19 Ohio App. 130, affirmed (1924), 111 Ohio St. 361; Morris v. Pearl Street Auction Co. (1939), 61 Ohio App. 452 [15 O.O. 283]. The trial court made no error prejudicial to defendant, and did not abuse its discretion, in choosing the filing of the complaint as the time from which to calculate the interest. Cincinnati Ins. Co. v. First Natl. Bank of Akron (1980), 63 Ohio St.2d 220, 226
[17 O.O.3d 136].
This exception to the general common law rule seems to be uniformly recognized by the Ohio authorities. Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 412 (the general rule in conversion actions is that plaintiff is awarded interest from the time of conversion); In re Guardianship of Ollie R. Cawein (Nov. 1, 1995), Hamilton App. No. C-940885, unreported at 7; GM Gas Exploration, Inc. v. McClain (Oct. 27, 1995), Athens App. No. 95 CA 1651, unreported at 3; The Oak Furniture Showroom, Inc. v. Normandy Pointe Associates, et al. (June 26, 1998), Montgomery App. No. 16816, unreported at 5.
An analysis of the conversion exception to the common law rule in light of R.C. 1343.03 was explained in GM Gas Exploration, supra, at 2-3 as follows:
 R.C. 1343.03(C) indicates that interest on a judgment based on tortious conduct may be computed from the date the cause of action accrued to the date of payment. In order to obtain an award of prejudgment interest under R.C. 1343.03(C), a party must file a motion with the court for prejudgment interest. The court must determine at a hearing that the party required to pay the money failed to make a good faith effort to settle the case while the prevailing party in fact did so. R.C. 1343.03(D) creates an exception to the procedure outline in R.C. 1343.03(C) if a different period for computing interest is provided by law. In the present case, R.C. 1343.03(D) provides for an exception to the procedure prescribed in R.C. 1343.03(C), as is discussed in greater detail below. * * * Ohio courts have long recognized that the common law provides that interest in actions based upon the tortious conversion of personal property may run from the time of the conversion. See Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 412, appeal dismissed (1994) Ohio St.3d 1440; Moore v. Univ. of Cincinnati Hosp.(1990), 67 Ohio app.3d 152, 154; Lyle v. Durham (1984), 16 Ohio App.3d 1, 3; Morris v. Pearl Street Auction Co. (1939), 61 Ohio App. 452 . In Wozniak and Moore, supra, the courts recognized that his common law right to prejudgment interest was in addition to the right to prejudgment interest contained in R.C. 1343.03(C). In light of R.C. 1343.03(D), we agree.
 When prejudgment interest is awarded in a conversion action, pursuant to the common law, the date for the calculation of the interest remains in the sound discretion of the trial court. Wozniak, supra, at 412. Thus, such an award will not be reversed in the absence of an abuse of discretion on the part of the trial court. Id; Lyle, supra, at 3. An abuse of discretion is characterized by action on the part of the trial court that is arbitrary, unreasonable or unconscionable. State v. Xie (1992), 62 Ohio St.3d 521, 527.
We concur with this analysis of the issue and therefore do not read R.C. 1343.03 to preempt the common law interest rule on conversion claims. Rather, we believe the award of prejudgment interest on conversion claims is determined by the trier of fact to be necessary in the form of compensatory damages to make the plaintiff whole. See DeSantis v. Smedley (1986), 34 Ohio App.3d 218, 221, where this Court stated as follows:
 In the second assignment, the appellants argue that the trial court erred in awarding pre-judgment interest without a post-judgment hearing pursuant to R.C. 1343.03(C). The appellants misconstrue the trial court's action. The trial court awarded interest from the date the money should have been refunded.
 The interest was in the nature of compensatory damages not a penalty. It is within the discretion of the trier of fact to include an element of interest within the damage award. Lawrence RR. Co. v. Cobb (1879), 35 Ohio St. 94; Lane Bodley Co. v. Day (1921), 13 Ohio App. 476, 32 Ohio C.C. (N.S.) 72; Phoenix Phase I Associates v. Ginsberg, Guren Merritt (1985), 23 Ohio App.3d 1, 23 OBR 33, 490 N.E.2d 634.
 R.C. 1343.03(C) is inapplicable to the instant case. That section permits the imposition of pre-judgment interest as a penalty for failure to negotiate in good faith for purposes of settlement. That section does require a motion, a hearing and a determination of lack, of good faith before imposing a pre-judgment penalty. However, that was not the course taken by the trial court here. An award of interest as a portion of compensatory damages was entirely proper here. The appellants' third assignment is overruled and the judgment of the trial court is affirmed.
Thus, we hold that the common law principle of prejudgment interest survives the enactment of R.C. 1343.03. Based on the record before us, we have no basis for determining that plaintiff satisfied R.C. 1343.03(C) by moving for prejudgment interest. An award of prejudgment interest on a conversion claim is within the trial court's discretion as part of the compensatory award. We have no basis for finding an abuse of discretion by the trial court in not awarding interest from the date of conversion on $11,500 of the award. The court allowed interest on the escrow proceeds apparently because it was a liquidated sum to which plaintiff was entitled. We cannot say that disallowing interest on the balance of the award constituted an abuse of discretion.
Cross-Assignment of Error I is overruled.
Judgment affirmed; cross-appeal overruled.
It is ordered that appellee/cross-appellant recover of appellant/cross-appellee its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, P.J., CONCURS WITH SEPARATE CONCURRING OPINION. KARPINSKI, J., CONCURS IN JUDGMENT ONLY.