**NATIONAL CITY BANK, Appellant and Cross–Appellee,**

v.

**RHOADES et al.; Drumm, Appellee and Cross–Appellant.**

[Cite as *Natl. City Bank v. Rhoades,* 150 Ohio App.3d 75, 2002-Ohio-6083.]

Court of Appeals of Ohio,
Second District, Miami County.

Nos. 2001–CA–51 and 2001–CA–60.

Decided Nov. 8, 2002.

Arthur R. Hollencamp, for appellant and cross-appellee National City Bank.

James C. King and Derek A. Younkman, for appellee and cross-appellant James R. Drumm.

Daniel L. O'Brien Jr., for Deborah Brading and James E. Rhoades.

---

FAIN, Judge.

{¶ 1} The central issue presented in this appeal is which of two parties, a bank or a boyfriend, should bear a loss occasioned by a girlfriend scorned. Plaintiff-appellant National City Bank appeals from a $100,000 judgment for defendant-appellee James R. Drumm, the boyfriend, on his breach-of-contract claim for its allowance of an unauthorized transfer of funds from Drumm's individual savings account to his girlfriend, Debra Brading.

{¶ 2} The bank argues that the transfer was authorized because Brading retained apparent authority to act for Drumm, even though she was not a signatory on the account. It next contends that the court erred by failing to grant a directed verdict in its favor, after the close of evidence, based on the same facts. Finally, the bank contends that the trial court erred by denying its motion for a judgment notwithstanding the verdict based upon Drumm's alleged admission that had he mitigated his damages his total loss would have been no more than $20,000.

{¶ 3} On cross-appeal, Drumm argues that the trial court erred by denying his motion for summary judgment and by denying his request for a directed verdict, because the evidence demonstrates that he did not authorize these withdrawals. Thus, the bank is strictly liable for the withdrawal and has a duty to recredit his account in full. He also claims that the trial court made several errors relating to its jury instructions.

{¶ 4} We conclude that the trial court did err by denying Drumm's request for a directed verdict. Brading did not possess authority, under any valid theory of agency, to make these withdrawals, so the bank breached its contract with Drumm by allowing them. The bank's breach of its contract with Drumm renders it liable for the withdrawals in the amount of $314,000, offset by any funds Drumm has already received relating to this transaction. For the same reasons, we find no error in the trial court's decisions to deny the bank's motions for directed verdict and for judgment notwithstanding the verdict. We further conclude that the trial court did not abuse its discretion by failing to give a jury instruction regarding Drumm's ability to recover consequential damages, because Drumm failed to prove bad faith, a prerequisite for the recovery of consequential damages under the Uniform Commercial Code ("UCC").

{¶ 5} Because we conclude that the trial court erred by having denied Drumm's motion for directed verdict, and because the amount awarded to Drumm, $100,000, is against the manifest weight of the evidence, the judgment of

the trial court is reversed, and this cause is remanded for further proceedings, including a trial on damages, consistent with this opinion.

I

{¶ 6}   Drumm and Brading were dating each other and have lived together on and off for several years.   Drumm was providing financial support to Brading, and he provided her with both health coverage and an insured vehicle through his company, Nation Grinding & Machinery.   As part of their relationship, Brading had written numerous checks on Drumm's checking account and had access to his corporate charge cards.

{¶ 7}   Like many couples, Drumm and Brading sometimes fought.   After one particularly ugly exchange on July 3, 2000, Brading went to National City Bank and withdrew $314,000 from Drumm's individual savings account.   She did so by approaching a teller, giving her Drumm's account number and electronic personal identification number ("PIN"), and providing the teller with a driver's license bearing the name Debra Brading, along with a Racquet Club membership identifying her as Debra Drumm.   She was also wearing a $20,000 diamond ring, which appeared to be an engagement ring.   Based upon these facts, the teller allowed the transaction.

{¶ 8}   Drumm attempted a reconciliation with Brading, evidently not being aware that she had withdrawn $314,000 from his savings account, without his authorization.   A week later, on July 10, 2002, Brading returned, and the two made up.   The next day, Brading told Drumm what she had done.   At that time, she gave him an $84,000 cashier's check made payable to Waterfield Mortgage, a check in excess of $100,000 drawn on the account of her ex-husband Jim Rhoades (she had placed certain funds with him), and powers of attorney executed in blank for three automobiles that she had purchased with Drumm's money.   The two checks Brading gave Drumm were not payable to him and were not endorsed by their payees.

{¶ 9}   Drumm made no attempt to do anything with these checks.   He did not notify the bank about the withdrawal until July 25, 2000, when Brading left again with the checks she had previously given him.   The bank stopped payment on the $84,000 check and froze the remaining $5,000 in Brading's checking account.   Drumm remained unsatisfied, however, and demanded that National City Bank credit his account in the amount of $314,000.

{¶ 10}   The bank instituted a declaratory judgment proceeding to determine to whom the remaining funds belonged, and obtained a temporary restraining order and a subsequent preliminary injunction enjoining transfer or dissipation of those funds.   Meanwhile, Drumm brought a claim against the bank for breaching

its contractual duty, and for its alleged negligence and carelessness in allowing unauthorized withdrawals from his account. He also brought claims against Brading and Rhoades for conversion. During this time, Brading ignored court orders and spent $17,000 of the remaining funds. The trial court ordered her to redeposit the funds with the clerk of court or face jail. To keep her from going to jail, Drumm paid $17,000 into court.

{¶ 11} After a jury trial, the trial court found that the bank had breached its contract to Drumm by permitting Brading to make an unauthorized withdrawal of $314,000 from his savings account. The jury also concluded that Drumm failed to mitigate his damages by waiting to notify the bank of the withdrawal and by failing to deposit the checks Brading gave to him. Accordingly, the jury awarded Drumm only $100,000 against the bank. Under the bank's declaratory judgment action, the jury also awarded Drumm the funds from the $84,000 mortgage check, the $5,000 remaining in Brading's personal checking account, titles to three vehicles once worth $81,000, and $17,000 deposited with the court. Further, the jury granted Drumm judgment for $75,000 against Brading on his conversion claim against her.

{¶ 12} From that judgment, both the bank and Drumm appeal.

## II

{¶ 13} The bank's first assignment of error is as follows:

{¶ 14} "The jury's verdict and the trial court's entry of judgment thereon, finding the July 3, 2000 withdrawal transaction to be unauthorized and a breach of contract by National City Bank, was not supported by any compelent [sic], credible evidence, against the manifest weight of the evidence and reversible error. The trial court's denial of National City Bank's motion for directed verdict was, likewise, reversible error."

{¶ 15} In this assignment of error, the bank first contends that although Brading was not a signatory on the savings account, she possessed apparent authority to withdraw funds from the account. In response, Drumm argues that the bank is liable for the transferred funds because Brading had no authority, actual or apparent, to withdraw funds from his savings account. This issue is fundamental to the resolution of this appeal.

{¶ 16} When analyzing manifest weight arguments, we "review the evidence, and * * * determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof." *Howard v. Howard* (Mar. 20, 1998), Montgomery App. No. 16542, 1998 WL 127526. It is well established that we cannot substitute our judgment for that of the trial court in reviewing the judgment of the trial

court. It is the trial court's function as the trier of fact to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence presented. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. A judgment that is supported by some credible, competent evidence that goes to all of the essential elements of the case is not against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 17} Under its personal account agreement with Drumm, the bank agreed that "when a sufficient balance of the Account is available, Bank shall pay items and honor Entries *initiated or authorized by Depositor.* * * * Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care." (Emphasis added.) The central issue is whether Brading possessed authority to withdraw funds from Drumm's savings account as his agent. The bank argues that she possessed apparent authority to do so. The jury disagreed, and so do we.

{¶ 18} "An agent's authority or power to act must come from the principal's manifestations of consent that the agent should act on his behalf. Restatement (Second) of Agency § 7, Comment *a* (1958). This authority can be expressly created by the principal's written or spoken words, or by his conduct which, reasonably interpreted, causes a third person to believe that he consents to the agency relationship. *Id.* at §§ 26, 27." *Lovely v. Cty. Fed. Credit Union* (Feb. 25, 1992 Me. Super), No. CV–91–148.

{¶ 19} "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 575 N.E.2d 817, syllabus.

{¶ 20} In this case, after hearing testimony from the bank's employees, Drumm, and Brading, the jury found that Drumm was the only person who signed the account signature card and that he never authorized the bank or Brading, in writing or orally, to permit anyone other than himself to make withdrawals or transfers from his savings account.

{¶ 21} The bank first belabors the point that its termination of the employment of the teller who gave the funds to Brading is not an admission that the transfer was unauthorized. It next points to several facts that it argues were enough to give Brading apparent authority to make this transaction. These facts

include (1) Brading's knowledge of the account number and PIN; (2) her identification (i.e., her driver's license in the name of Debra Brading and a racquetball club membership in the name of Debra Drumm) coupled with her alleged assertion that she and Drumm were married; (3) her prior signatures on checks from Drumm's checking account; and (4) previous telephonic transfers of funds from Drumm's savings account into his checking account.

{¶ 22} Despite these actions, we conclude that the evidence in the record supports the trial court's finding that Brading was not authorized to withdraw $314,000 from Drumm's savings account. In reaching this conclusion, we attach no significance to the fact that the bank terminated its teller's employment.

{¶ 23} Under Ohio law, apparent authority must derive from the conduct of the principal, not the agent. *Master Consol. Corp.,* supra. Brading's assertions regarding the account and her relationship with Drumm are not enough to bestow her with apparent authority. Nor does the fact that she signed checks from Drumm's checking account authorize her to make withdrawals from his savings account. *Lovely,* supra (wife's joint checking account with husband did not bestow apparent authority upon her to withdraw funds from his individual savings account). Furthermore, although Brading did make telephonic transfers from Drumm's savings account into his checking account, this does not amount to authorization on his part for her to withdraw money for her own benefit, and there is no evidence that the bank even knew that it was Brading, not Drumm, who was making these telephonic transfers, which appear to have been conducted without the benefit of the intervention of a human being on the bank's end.

{¶ 24} The bank focuses upon Brading's knowledge of Drumm's PIN to bolster its argument that the transaction was authorized. But this reliance is misplaced. With respect to withdrawals, PINs are generally accepted as the sole proof of identity only by automatic teller machines, where the amount that can be withdrawn is subject to a daily dollar limit. This is a consequence of the current state of technology in general use, which is not amenable to further verification of identity by automated machinery. Drumm testified that only his checking account, not his savings account, could be used as a source for these types of transfers. Thus, even if he gave Brading his PIN, she should only have been able to use it to access money from his checking account, and then only subject to a limited daily dollar amount.

{¶ 25} Accordingly, the bank's first argument is not well taken.

{¶ 26} The bank next argues that the trial court erred by denying its motion for a directed verdict. The bank reiterates the same argument in its second assignment of error, which is as follows:

{¶ 27}  "The trial court's denial of National City Bank's motion for directed verdict and subsequent entry of judgment on the breach of contract claim of James Drumm against National City Bank was, likewise, reversible error."

{¶ 28}  Drumm also argues that this was not a matter for the jury.  He takes issue with both the trial court's denial of his motion for summary judgment and its denial of his motion for a directed verdict.  His first two assignments of error on cross-appeal are as follows:

{¶ 29}  "The trial court erred to the prejudice of the defendant, James R. Drumm, by overruling his motion for summary judgment filed September 13, 2001 as plaintiff, National City Bank, is strictly liable for paying items which were not properly payable and failure to pay as directed renders the bank strictly liable as a matter of law."

{¶ 30}  "The trial court erred to the prejudice of the defendant, James R. Drumm, by overruling his motion for directed verdict made at the close of evidence at trial as plaintiff, National City Bank, is strictly liable for paying items which were not properly payable and failure to pay as directed renders the bank strictly liable as a matter of law."

{¶ 31}  We note at the outset that "the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits."  *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615.  Although we had previously reached the opposite conclusion, we are bound to follow a holding of the Ohio Supreme Court.  Thus, we do not consider Drumm's first assignment of error on its merits.  Even if Drumm's motion for summary judgment was erroneously denied, that does not constitute reversible error, pursuant to *Continental Ins. Co.,* supra.  Drumm's first assignment of error is overruled.

{¶ 32}  We next consider the bank's and Drumm's assignments of error relating to the denials of their motions for directed verdict.  We engage in a de novo review of the entire record to determine whether a denial of either party's request for a directed verdict was appropriate in this case.  *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155.

{¶ 33}  Under Ohio Civ.R.50:

{¶ 34}  "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 35} With this standard in mind, we address the parties' claims. Here, the bank again argues that the transaction was authorized and that the trial court did not err by denying Drumm's motion for directed verdict but did err by failing to direct a verdict in its favor on Drumm's breach-of-contract claim. In response, Drumm contends that as a matter of law this transaction was unauthorized and that the bank is strictly liable and must recredit his account.

{¶ 36} We have concluded, for all the reasons set forth earlier, that Brading was not authorized to withdraw $314,000 from Drumm's savings account. But this does not end our inquiry. We must next determine what damages, if any, Drumm should recover for the bank's allowance of the unauthorized withdrawal from his savings account.

{¶ 37} The UCC governs the contractual relationship between the bank and Drumm. *Ed Stinn Chevrolet, Inc. v. Natl. City Bank* (1987), 28 Ohio St.3d 221, 28 OBR 305, 503 N.E.2d 524. R.C. 1304.30 (former R.C. 1304.24) explains when a bank may charge a customer's account:

{¶ 38} "(A) A bank may charge against the account of a customer an item that is properly payable from that account * * *. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."

{¶ 39} A bank that pays an item against a customer's account that is not properly payable is required to recredit the customer's account in the amount of the item. *Ed Stinn Chevrolet, Inc.*, supra, citing *Cincinnati Ins. Co. v. First Natl. Bank* (1980), 63 Ohio St.2d 220, 17 O.O.3d 136, 407 N.E.2d 519 (construing former R.C. 1304.24). Indeed, there the court concluded:

{¶ 40} "When a customer's bank makes final payment on an item which is not 'properly payable' pursuant to R.C. 1304.24 [now R.C. 1304.30], the appropriate remedy is for the bank 'to recredit the customer's account.' * * * 'It is axiomatic in banking relations that a bank may pay a check and debit its customer's account only as directed by the customer. * * * Failure to pay as directed renders the bank *strictly liable for any loss sustained.*'" (Emphasis sic.) Id. at 233, 28 OBR 305, 503 N.E.2d 524, quoting *Cincinnati Ins. Co.*, 63 Ohio St.2d at 224, 17 O.O.3d 136, 407 N.E.2d 519, and *Ford Motor Credit Co. v. United Serv. Auto. Assn.* (N.Y.Civ.Ct. 1972), 11 UCCRS 361, 363, 1972 WL 20865.

{¶ 41} This does not mean, however, that "recrediting or compensating the customer for the face amount of the improperly paid item * * * always provide[s] the proper remedy." *Ed Stinn,* supra. In this instance, for example, Drumm should not recover more than the amount of his actual loss.

{¶ 42} The bank argues that our decision should not be guided by *Ed Stinn*, supra, and its progeny. But we disagree. Although not directly controlling, *Ed Stinn* presents an analysis of Ohio's adoption of the UCC as it pertained to improperly paid items. The bank is correct that the UCC has since been substantially revised. However, *Ed Stinn* interpreted former R.C. 1304.24, which has now been recodified as R.C. 1304.30, and without further Ohio Supreme Court case law to the contrary we look to this case for guidance on the subject of a bank's improper payments from an account.

{¶ 43} Here, the bank allowed two unauthorized withdrawals from Drumm's savings account and is thus precluded from raising Drumm's alleged negligence as an estoppel. If the bank had obeyed Drumm's instructions exemplified by his signature card on the account, Brading's withdrawal from the account would not have occurred without Drumm's permission.

{¶ 44} Applying the standard set out in Civ.R. 50, after construing the evidence in a light most favorable to Drumm, the jury could and did reach a conclusion favorable to Drumm. Accordingly, the bank's first and second assignments of error are overruled.

{¶ 45} With respect to Drumm's motion, we conclude that the trial court did err by denying his motion for directed verdict on his breach-of-contract claim. Again, applying the standard set forth in Civ.R. 50 and construing the evidence in a light most favorable to the bank, we conclude that a reasonable jury could only have found that Brading's withdrawal was not authorized, that the bank breached its contract with Drumm by allowing it, and that the bank is obligated to recredit Drumm's account, subject to a possible offset for unjust enrichment, since Drumm should not be made more than whole— that is, he should not recover an amount from the bank that, together with other benefits he has derived from the transaction, will unjustly enrich him. *Ed Stinn*, supra. Thus, the court should have granted his motion. Accordingly, Drumm's second assignment of error is sustained. Based on the record before us, however, we are unable to compute an award. Therefore, we must remand this cause to the trial court for a new trial on damages.

{¶ 46} On remand, the trial court must not put Drumm in a better position than he would have been in had the bank fully performed its obligations under its banking agreement with him. Here, Drumm has already received the benefit of, or may have received the benefit of, (1) an $84,000 cashier's check payable to Brading's mortgage company, purchased with funds from Drumm's account, that has apparently never been negotiated and may be repaid into Drumm's account; (2) $17,000 he deposited with the court to accomplish his desire to avoid Brading's commitment to the county jail; (3) three Honda vehicles; and (4) approximately

$5,000 from Brading's checking account. Additionally, he received a verdict against Brading on his conversion claim for $75,000. Finally, he may have received some benefit from the additional funds Brading dissipated before, during, and up to the time of litigation. On remand, the trial court must determine the value of the vehicles that he has received along with the benefit of any additional funds Brading dissipated or that he has recovered against her under his conversion judgment and add these amounts to the funds he has already received. This amount should then be subtracted from the $314,000, to reach the amount the bank still owes Drumm. The bank may also have a subrogation right to the judgment Drumm received against Brading, under R.C. 1304.36.

### III

{¶ 47} The bank's final assignment of error is as follows:

{¶ 48} "The trial court's refusal to grant plaintiff's motion for judgment NOV constitutes reversible error as a matter of law."

{¶ 49} The bank contends that the trial court erred by refusing to grant its motion for judgment notwithstanding the verdict, because Drumm failed to mitigate his damages, and allegedly admitted in his testimony that if he had taken the checks and property offered to him by Brading on July 11, 2000, his total loss would have been no more than $20,000.

{¶ 50} In his ruling denying the bank's motion, the trial judge found as follows:

{¶ 51} "Although Drumm acknowledged his loss at that time would have been $20,000 at maximum if he had deposited the checks and sold the cars, the jury' was not obligated to accept or believe that conclusion.

{¶ 52} "That is because the question assumed a fact that never occurred. Drumm never had the three vehicles in his possession. Although Brading offered to sell and/or return them and he gave her a chance to do so, she never delivered. Hence, the admission Drumm made was to a hypothetical which never occurred. It was up to the jury to decide if it could occur as postulated."

{¶ 53} The same tests are applied in reviewing decisions on motions for judgment notwithstanding the verdict as are applied with respect to directed verdicts. *Schafer,* supra. Thus, in evaluating whether a judgment notwithstanding the verdict was merited, we must decide, de novo, if there exists any evidence of substantial probative value in support of the claims of the party against whom the motion is directed. Therefore, our first task is to decide whether Drumm is barred as a matter of law from receiving damages in excess of $20,000 by virtue of his failure to mitigate damages. If we decide in his favor on the legal issue, we

must then consider whether the damage award is supported by substantial, probative evidence, upon which reasonable minds could differ.

{¶ 54}  As explained above, the bank was obligated to recredit Drumm's account after having allowed an unauthorized withdrawal, subject to a possible offset of any amounts by which Drumm would thereby be unjustly enriched. Thus, as a matter of law, Drumm could receive a verdict in excess of $20,000, even with his admission that he could have mitigated his damages.

{¶ 55}  The bank argues that under *Ed Stinn*, supra, even if the bank is generally liable to recredit an account after having allowed unauthorized withdrawals— recrediting the account in full is not always the appropriate remedy. Because Drumm had access to almost $219,000 when he and Brading made up in July 2002, it would be unjust for the bank to be liable.  We disagree.  Drumm did not receive $219,000 in cash in his account but instead received a check drawn on Rhoades's account and power of attorney forms for three vehicles.  This is not the same thing as cash in hand, and does not prevent a judgment in his favor for the full amount subject to a possible offset under the doctrine of unjust enrichment, pursuant to *Ed Stinn*, supra, as explained above.  Accordingly, the bank's third assignment of error is overruled.

## IV

{¶ 56}  Drumm's third, fourth, fifth, and sixth assignments of error are as follows:

{¶ 57}  "The trial court erred to the prejudice of the defendant, James R. Drumm, by not instructing the jury as to the applicable law regarding strict liability of a bank for paying items which were not properly payable and that failure to pay as directed renders the bank strictly liable as a matter of law."

{¶ 58}  "The trial court erred to the prejudice of the defendant, James R. Drumm by overruling his motion for directed verdict made at the close of evidence at trial as National City Bank breached its contract and was negligent as a matter of law."

{¶ 59}  "The trial court erred to the prejudice of the defendant, James R. Drumm, by not instructing the jury as to the applicable law as to the duty of National City Bank to mitigate damages as both parties to a contract have a duty to mitigate their damages as a matter of law."

{¶ 60}  "The trial court erred to the prejudice of defendant, James R. Drumm, by not instructing the jury as to the applicable law regarding a customer's right to assert a bank's failure to use ordinary care as a total shield as to customer negligence as a matter of law."

{¶ 61}  These assignments of error claim errors that interfered with Drumm's ability to be made entirely whole by the jury's verdict.  Since we conclude that Drumm is entitled, as a matter of law, to be made entirely whole, these assignments of error are moot, and they are accordingly overruled.

## V

{¶ 62}  Drumm's final assignment of error is as follows:

{¶ 63}  "The trial court erred to the prejudice of defendant, James R. Drumm, by not instructing the jury on the applicable law regarding 'bad faith' as the bank has a duty to learn more and/or investigate further as a matter of law."

{¶ 64}  In this assignment of error, Drumm claims that the trial court erred by failing to give an instruction regarding recovery of consequential damages, since he believes that he is entitled to them, including his attorney fees for the bank's alleged bad faith in handling the questioned transaction, under *Ed Stinn*, supra.

{¶ 65}  In *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 327–328, 594 N.E.2d 9, we explained:

{¶ 66}  "To show reversible error, the proponent of the error must make a two-part showing.  First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable.  Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction.  In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge."  (Citations omitted.)

{¶ 67}  We conclude that Drumm has failed to show that he was prejudiced by the trial court's refusal to give the proposed instruction.

{¶ 68}  R.C. 1304.03 allows for recovery of consequential damages under the UCC:

{¶ 69}  "(E) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care.  If there also is bad faith, the measure of damages includes any other damages the party suffered as a proximate consequence."

{¶ 70}  " 'Bad faith' is not defined by the * * * Uniform Commercial Code. * * * 'In determining whether the bank acted with bad faith, "courts have asked whether it was 'commercially' unjustifiable for the payee to disregard and refuse to learn facts readily available." * * *'  'The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to

evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction.' 'Bad faith' has also been defined as 'that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.'" (Citations omitted.) *Master Chem. Corp. v. Inkrott* (1990), 55 Ohio St.3d 23, 28, 563 N.E.2d 26, quoting *Appley v. West* (C.A. 7, 1987), 832 F.2d 1021, 1031, and *Gen. Ins. Co. of Am. v. Commerce Bank of St. Charles* (Mo.App. 1974), 505 S.W.2d 454, 458.

{¶ 71} Nothing within the evidence presented to the jury demonstrates "a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." Thus, the trial court properly declined to give a jury instruction on this issue.

{¶ 72} Drumm's final assignment of error is overruled.

## VI

{¶ 73} All of the bank's assignments of error and Drumm's first, third, fourth, fifth, sixth, and seventh assignments of error having been overruled, and Drumm's second assignment of error having been sustained, we reverse the judgment of the trial court and remand this cause further for proceedings, including a new trial on damages, consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF, P.J., and BROGAN, J., concur.