**Ramzi Atti BOUTROS, Appellant,**

v.

**RIGGS NATIONAL BANK, D.C., et al.**

**No. 79–2064.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1980.

Decided May 15, 1981.

Anton M. Weiss, Washington, D. C., for appellant.

Wallace A. Christensen, Washington, D. C., for appellees.

Before WILKEY and EDWARDS, Circuit Judges, and MacMAHON,* Chief Judge, United States District Court for the Southern District of New York.

Opinion for the Court filed by Chief District Judge MacMAHON.

MacMAHON, Chief District Judge:

This is an appeal by plaintiff-appellant Ramzi A. Boutros ("Boutros") from the entry of a judgment n.o.v. in favor of defendant-appellee Riggs National Bank of Washington, D.C. ("Riggs") in the United States District Court for the District of Columbia. This action to recover for the allegedly unauthorized withdrawals of funds from Boutros' savings account at Riggs, was tried to a jury which rendered a verdict for Boutros for $21,000, the full amount claimed. Upon motion of Riggs, Judge John H. Pratt set aside the verdict and entered judgment for defendant. For the reasons set forth below, we reverse and remand to the district court with the direction to enter judgment in accordance with the verdict.

An award of judgment notwithstanding the verdict should only be made if the Court, after viewing all of the evidence, together with all inferences reasonably to be drawn, in the light most favorable to the successful party, determines that the evidence is so overwhelmingly in favor of the other party that reasonable men could not disagree. Upon review, we must do the same. *Vander Zee v. Karabatsos*, 589 F.2d 723 (D.C.Cir.1978); *Luck v. Baltimore & Ohio Railroad Co.*, 510 F.2d 633 (D.C.Cir. 1975). Moreover, it is the function of neither the trial nor the appellate court to assess the credibility of witnesses or determine the weight of the evidence. *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171 (3d Cir. 1975). With these principles in mind, the facts are as follows.

Boutros, an Egyptian citizen, opened a savings account with an initial deposit of $1,500 at Riggs' Dupont Circle branch in September 1976 during a visit to the United States. He was introduced at the bank by John Beshai ("Beshai"), a fellow Egyptian residing in this country, whom Boutros had known for some time. Beshai already had an account at Riggs. Boutros opened the account in his name alone and his were the only signatures, in English and Arabic, on the signature card. However, Boutros instructed the branch manager to send all statements of his account to Beshai's office in Washington, explaining that the maintenance of the account violated Egyptian currency regulations at that time.

The following day, Boutros executed a power of attorney which provided as follows:

> I am the undersigned RAMZI ATTIA BOUTROS, EGYPTIAN, BORN Oct. 27, 1929 on MONDAY SEPTEMBER THE THIRTEENTH YEAR NINETEEN HUNDRED SEVENTY SIX here declare the power of attorney to Mr. John A. Beshai, Egyptian Attorney and member of Egyptian Bar, all my rights to ship any car or spare part in my name to Egypt and take for that all necessary. I also give him the power of attorney to represent me at immigration office [sic] or any governmental departments and hand necessary papers.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

Shortly thereafter, Boutros returned to Egypt. In March 1977 Boutros wired a further deposit of $23,349.88 into the account.

Commencing in February 1977 and continuing to September of that year, Beshai made a series of withdrawals from the account totalling $21,000. Beshai concededly made the withdrawals by presenting to the bank withdrawal slips on which he had signed Boutros' name. An officer of Riggs admitted at trial that at the time the withdrawals had been made he thought that the slips had in fact been signed by Boutros and was unaware that it was Beshai who signed them. At this time Riggs had an established policy requiring that a power of attorney be on file with the bank for any person other than the depositor to make withdrawals. No such document was filed with Riggs.

Each of the withdrawals appeared on the bank statements. However, the bank statements were mailed to Beshai and Boutros was not aware of these transactions.

Boutros returned to the United States in September 1977 and requested Riggs to forward all future statements to his son-in-law, who then lived in New Jersey. When the next statement was received on October 3, 1977, Boutros noticed the withdrawals and promptly contacted Riggs, asserting that the withdrawals had not been authorized. Riggs refused to credit his account for the money paid over to Beshai and this suit resulted.

The jury returned a verdict for Boutros in the amount of $21,000. Judge Pratt, however, granted judgment n.o.v. to Riggs, finding, at Riggs' urging, that the evidence conclusively established that Beshai was authorized to withdraw funds from Boutros' account and that therefore the Uniform Fiduciaries Act insulated Riggs from liability. Alternatively, the trial court rested its decision upon its finding that plaintiff had been negligent in failing to inspect his bank statements, precluding his recovery.

## I.

The Uniform Fiduciaries Act ("U.F.A.") § 2, codified at D.C.Code § 21–1702, upon which Riggs relies, provides in pertinent part:

> A person who in good faith pays or transfers to a fiduciary money ... which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary. ...

■ The U.F.A. applies only "when one person honestly deals with another *knowing* him to be a fiduciary." (Emphasis supplied.) *Johnson v. Citizens National Bank of Decatur*, 30 Ill.App.3d 1066, 1069, 334 N.E.2d 295, 298 (1975). In the face of conflicting evidence, the question of whether the person is authorized to receive funds, and whether, in this case, Riggs "knew" of such authorization is best left to the trier of fact.

■ The trial court rested its determination that the U.F.A. applied to this case upon the testimony of three witnesses. The bank officer who opened Boutros' account testified that Boutros had indicated that Beshai "would be handling business transactions" for Boutros in the United States. This testimony was corroborated by Beshai, who also asserted that plaintiff had signed a second power of attorney authorizing Beshai to handle all of plaintiff's accounts and business affairs. Beshai's secretary corroborated the testimony concerning the "second power", although no copy of that document was produced at trial. Riggs had never seen this alleged "second power", whose existence was denied absolutely by Boutros. Boutros also denied that he had authorized Beshai in any way to withdraw funds from his account.

It appears to the court that, in granting judgment n.o.v. in light of the opposing testimony, the trial court impermissibly invaded the province of the jury to determine the weight of the evidence and the credibility of the witnesses. Whether or not Boutros had in fact authorized Beshai to make withdrawals, and whether Boutros' statement that Beshai would be handling his business affairs was sufficient for Riggs to rely upon, especially since it had no power of attorney on file and since it believed the

withdrawal slips to have been signed by Boutros, was better left to the trier of fact to determine. To find that the U.F.A. insulated Riggs from liability as a matter of law was erroneous.[1] Upon view of all the evidence, a reasonable jury could have found that Beshai had not been authorized to make withdrawals from the account and that Riggs did not "know" that it was dealing with a fiduciary.

## II.

The trial court alternatively rested its decision upon its finding that as a matter of law there was insufficient evidence to establish that Boutros had been free of negligence in failing to discover the withdrawals prior to October 1977.

Initially, we hold that forgeries of savings withdrawal slips are governed by the Uniform Commercial Code ("UCC") and constitute "unauthorized signatures" on "items", dealt with by UCC § 4–406, codified at D.C.Code § 28:4–406.[2] This section provides that upon proof by a depositor of payment by the bank of an item bearing an unauthorized signature, the depositor shall recover either if the bank fails to prove negligence by the depositor or if the depositor proves negligence by the bank.[3]

■ Upon a motion for judgment n.o.v., the burden which Riggs must bear on this issue is extremely heavy. Riggs must establish that the evidence of negligence is so clear and convincing that no reasonable juror could find to the contrary. Though Riggs presents a reasonably strong case upon which a juror could find Boutros negligent, we cannot on balance comfortably say that the evidence is so overwhelming that no reasonable juror could hold otherwise.

The evidence establishes that Boutros did not inspect the bank statements simply because he did not receive them. The statements were mailed, pursuant to Boutros' instruction, to Beshai. The issue is thus framed as whether this arrangement constituted negligence on the part of Boutros.[4]

Boutros candidly informed Riggs that he wanted the statements to be sent to Beshai

---

1. We decline to accept appellee's argument that as a matter of law the first power of attorney, set forth above, authorized Beshai to make withdrawals from Boutros' account. This power is at best ambiguous as to Beshai's authority to utilize this account. The account is not even mentioned in the document, although it had been opened on the preceding day.

2. Though no District of Columbia cases exist on point, we conclude that UCC § 4–406 applies to savings account withdrawal slips. Article Four of the UCC as a whole applies to the relationship between banks and depositors. An "account" is defined in UCC § 4–104(a) to include checking and savings accounts. Moreover, it seems clear that a savings withdrawal slip is an "item", as defined in UCC § 4–104(g), whose forgery is covered by Section 4–406. At least one other court has reached the same conclusion. *Coleman v. Brotherhood State Bank*, 3 Kan.App.2d 162, 592 P.2d 103 (1979). See also *Joler v. Depositors Trust Co.*, 309 A.2d 871 (Me.1973); *Gillen v. Maryland National Bank*, 274 Md. 96, 333 A.2d 329 (1975).

3. In its charge the Court directed that a finding of negligence on Boutros' part absolutely would preclude a verdict in his favor for the full $21,-000: "If you find that the plaintiff's conduct was negligent and that this negligence substantially contributed to the allegedly unauthorized withdrawals, I instruct you to enter a verdict in favor of the defendant." Though the trial judge did not state directly that the burden of proof on this issue rested upon Riggs, a fair reading of the charge as a whole leads to no other conclusion.

4. Riggs argues that the failure to read the statements and notify the bank is negligent even when the depositor does not receive the statements. The cases which are cited, however, involve sudden, mysterious nondeliveries of statements and the negligence found was the failure to inquire as to the disappearance of the statements. See *Myrick v. National Savings & Trust Co.*, 268 A.2d 526 (D.C.Ct.App.1970); *Westport Bank & Trust Co. v. Lodge*, 164 Conn. 604, 325 A.2d 222 (1973). Hence they are distinguishable from this case where delivery to a third person was planned.

Cases not cited by the parties have addressed, and split upon, the question of whether it is negligent as a matter of law for a principal to have bank statements sent to an agent who is also authorized to make withdrawals or write checks upon the account. See, e. g., *Jackson v. First National Bank of Memphis, Inc.*, 55 Tenn.App. 545, 403 S.W.2d 109 (1966); *Exchange Bank & Trust Co. v. Kidwell Construction Co., Inc.*, 463 S.W.2d 465 (Tex.Civ.App.1971).

to avoid detection of the account by Egyptian authorities. It is apparent that Boutros had known Beshai for some time, and that Boutros had utilized Beshai's services. Beshai, however, did not sign the signature card and no power of attorney was ever filed with Riggs authorizing him to make withdrawals.

After examining the entire record, we find that the evidence was not so conclusive as to warrant the removal of the issue of Boutros' negligence from the jury.

### III.

Lastly, Riggs urges that if the trial court is reversed a new trial be granted. We see no reason for doing so. Riggs does not challenge any evidentiary rulings nor does it complain as to the charge given to the jury. It only takes issue with the verdict. Riggs' hope for a different outcome is not sufficient reason to direct a retrial of this case.

### IV.

Accordingly, for the foregoing reasons, we reverse the entry of judgment n.o.v. in favor of defendant and remand with instructions to enter judgment for plaintiff in accord with the verdict.

*Reversed and Remanded.*