No. 3--10--0003
Opinion filed January 27, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| JARRED NEWELL, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | No. 07--CH--1125 |
| RUTH NEWELL, FIRST MIDWEST | ) | |
| BANCORP INC., an Illinois | ) | |
| Corporation, | ) | Honorable |
| | ) | Michael J. Powers, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

_____

**OPINION**

Jarred Newell filed a complaint against his mother, Ruth Newell, and First Midwest Bancorp Inc. (FMB), alleging conversion and breach of contract involving Ruth's unauthorized withdrawal of funds from a saving account in his name. The trial court ruled that Jarred's complaint was barred by the three-year statute of limitations in section 4-111 of the Uniform Commercial Code, Bank Deposits and Collections (UCC) (810 ILCS 5/4-111 (West 2006)) and granted FMB's motion for summary judgment. We reverse and remand for further proceedings.

In 1989, Ruth and Jarred were involved in an automobile accident. At the time of the accident, Jarred was six years old. Ruth filed a lawsuit, individually and as the mother and next friend of Jarred, against various defendants involved in the accident.

Several defendants eventually agreed to settle the case. On December 29, 1993, the trial court approved the settlement and dismissed the complaint as to those parties involved in the agreement. In addition to ordering the payment of medical expenses and awarding fees and costs, the order required that the funds awarded to Jarred be deposited in an account at FMB or some other federally insured depository. The order further stated: "No funds shall be withdrawn from the minor's account without prior court order."

On January 14, 1994, Ruth opened a guardianship account at FMB for Jarred's benefit. Ruth used Jarred's social security number to open the account. The terms of the account included a signature card, which was signed by Ruth "as guardian for Jarred Newel, a minor." In accordance with the trial court's order, the signature card included the following statement: "Minor account. No minor withdraw until 18 years old on 5-18-00 per court order - See Louise McLaren." Ruth's attorney, Thomas Cowgill, gave bank personnel a copy of the court order when Ruth opened the account.

Between January 14, 1994, and May 23, 1994, Ruth deposited a total of $210,050.11 into the account. She subsequently removed funds from the account without a court order. By June 30, 1997,

2

the account was substantially reduced to a balance of $46. Ruth's last withdrawal from the account was on September 30, 2001. She claimed that she used the money for her son's health and welfare. She did not keep any records of the withdrawals.

In his discovery deposition, Jarred explained that he became aware of the FMB account during his teens; he was told that he would be able to withdraw the funds when he turned 18 years of age. When Jarred was 16 or 17 years old, he asked Ruth about the funds, and she told him that she changed the age to obtain the funds from 18 to 21. Jarred did not ask his mother how much money was in the account.

When he was almost 21, Jarred again asked Ruth about the account. Ruth told him that he had to wait until he was 23 years old to withdraw the money. At that point, Jarred became "curious" and "wondered what was going on." However, he trusted Ruth and decided to wait until he turned 23 to withdraw the money because that was when he graduated from college.

In May 2005, Jarred graduated from college and turned 23 years old. He asked his mother for the money. Once again, she was evasive and said the funds were not available. Jarred then began to investigate the status of the funds on his own.

In late 2005 or early 2006, Ruth told Jarred that there was no money left in the FMB account. In October or November of 2006, Jarred contacted Attorney Cowgill. Cowgill told Jarred that he helped Ruth deposit the settlement money into a bank account in 1994. In March 2007, Jarred's attorney confirmed that the FMB

3

account had been depleted.

On April 11, 2007, Jarred filed a four-count complaint against Ruth and FMB.  Counts I through III alleged that Ruth committed conversion and sought a petition for rule to show cause against her for failing to obtain a court order prior to the withdrawal of funds from his FMB account.  Count IV claimed that FMB breached its contract with Jarred by processing withdrawals from the account without a court order.

FMB filed a summary judgment motion in which it asserted, among other things, that count IV should be dismissed because Jarred's claim against the bank was barred by the three-year statute of limitations under section 4-111 of the UCC (810 ILCS 5/4-111 (West 2006)).  The trial court found that the three-year statute of limitations applied and granted FMB's motion.

STANDARD OF REVIEW

Summary judgment is a drastic means of disposing of litigation and, as such, the right of the moving party must be clear and free of doubt.  *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240 (1994).  Summary judgment should be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2006).  In deciding whether a ruling for summary judgment is appropriate, we construe the record strictly against the movant and liberally in favor of the nonmoving party.  *Espinoza v. Elgin, Joliet & Eastern*

4

*Ry. Co.*, 165 Ill. 2d 107 (1995). We review the trial court's decision to grant a motion for summary judgment *de novo*. *Friends of Parks v. Chicago Park District*, 203 Ill. 2d 312 (2003).

ANALYSIS

I. Applicable Statute of Limitations

Jarred contends that the trial court erred in finding that his breach of contract claim against FMB was barred by the 3-year statute of limitations under section 4-111 of the UCC, rather than the 10-year period for a common law breach of contract action.

Where two statutes of limitations arguably relate to the same cause of action, the statute that more specifically relates to the action must be applied. *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 286 Ill. App. 3d 1069 (1997). A plaintiff cannot avoid the application of a UCC statute of limitations by characterizing its cause of action as a non-UCC claim. *Watseka First National Bank v. Horney*, 292 Ill. App. 3d 933 (1997).

Section 13-206 of the Code of Civil Procedure (735 ILCS 5/13-206 (West 2006)) governs common law breach of contract suits and applies a 10-year statute of limitations. Section 13-206 provides:

"[A]ctions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13-206 (West 2006).

Section 13-206 is a general statute that applies not only to written contracts but also to bonds, promissory notes, bills of

5

exchange, leases and other indebtedness.  735 ILCS 5/13-206 (West 2006).

Section 4-111, on the other hand, directly relates to a bank's duties and obligations to its customers under article 4 of the UCC. 810 ILCS 5/4-101 et seq. (West 2006).  Section 4-111 of the UCC states:

> "An action to enforce an obligation, duty or right arising under this Article must be commenced within 3 years after the cause of action accrues."  810 ILCS 5/4-111 (West 2006).

Article 4 governs claims involving unauthorized signatures on items from "accounts."  See 810 ILCS 5/4-104(a) (West 2006).  The term "account" is defined under article 4 to include a savings account.  810 ILCS 5/4-104(a)(1) (West 2006); see *Boutros v. Riggs National Bank*, 655 F. 2d 1257 (D.C. Cir. 1981) (Article 4 of UCC governs savings accounts).  Additionally, a saving account withdrawal slip is an "item" as defined in section 4-104(a)(9). 810 ILCS 5/4-104(a)(9) (West 2006); *Boutros*, 655 F.2d at 1260. Thus, the article 4 statute of limitations in section 4-111 more specifically pertains to the unauthorized withdrawal of funds from a savings account.

Jarred's allegations of common law breach of contract do not insulate his cause of action from the applicable UCC statute of limitations.  His complaint claims that the bank breached its contractual obligation to him by allowing Ruth to withdraw funds by presenting her signature on a withdrawal slip without an

6

accompanying court order. Section 4-401(a) of the UCC provides that an item is "properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank." 810 ILCS 5/4-401(a) (West 2006). Section 4-401 applies to situations where, as here, a withdrawal is alleged to be in breach of the signatory card and included instructions that formed the bank/customer agreement. *National City Bank v. Rhoades*, 150 Ohio App. 3d 75, 2002-Ohio-6083, 779 N.E.2d 799; *Ahrens v. Westchester Federal Savings & Loan Ass'n*, 58 A.D.2d 799 (N.Y. App. Div. 1977). We therefore hold that section 4-111's three-year statute of limitations applies to Jarred's cause of action.

## II. The Discovery Rule

The application of section 4-111 does not necessarily time-bar Jarred's claim against FMB. Section 4-111 provides that an action to enforce a right or obligation must be commenced within three years after the cause of action accrues. The UCC does not define when a cause of action "accrues." Therefore, we must look to other Illinois law applying statutes of limitations. See *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686 (2002).

An action for breach of contract accrues when the breach of the contractual duty or obligation occurs. *ABF Capital Corp. v. McLauchlan*, 167 F. Supp. 2d 1011 (N.D. Ill. 2001). The discovery rule is an equitable exception that tolls the statute of limitations period until the plaintiff discovers, or has reason to

7

discover, the cause of action. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407 (1981). The rule was created to alleviate the harsh consequences that result from a strict application of a limitations period. *Continental Casualty*, 329 Ill. App. 3d at 701. It typically applies in cases where the relationship between the injury and the alleged wrongful conduct is obscure. *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434 (7th Cir. 2005). Thus, under the discovery rule, the statute of limitations does not begin to run until the plaintiff knew, or in the exercise of reasonable diligence should have known, that he was injured, the cause of his injury, and that there was some indication of wrongdoing. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002).

Generally, the issue of whether an action was brought within the time allowed by the discovery rule is a question of fact. *Witherell v. Weimer*, 85 Ill. 2d 146 (1981). However, where it is clear from the undisputed facts that only one conclusion can be drawn, the question may be resolved as a matter of law. *Castello v. Kalis*, 352 Ill. App. 3d 736 (2004).

In this case, Jarred alleged that his mother did not tell him that the money was gone until late 2005 or early 2006. Prior to that time, he did not know how much money was in the savings account. Jarred later had a conversation with attorney Cowgill in October or November 2006 and learned that the settlement money had all been deposited into the account. He ultimately verified that the money was gone in March 2007.

8

Under these circumstances, Jarred contends there was no way he reasonably should have discovered that Ruth withdrew the funds from his account without a court order since she was in a position of trust. He claims that he accepted his mother's explanation of the change in age to withdraw funds for several years, but eventually decided to investigate the matter in the 2005. FMB questions the reasonableness of Jarred's delayed investigation and argues that the section 4-111 clock began ticking in the spring of 2003 when Jarred became "curious" about Ruth's evasiveness. Given the disputed allegations, there is a question of fact concerning whether Jarred should have discovered the unauthorized withdrawal of funds from the saving account before the fall of 2005.

FMB nevertheless insists that the discovery rule does not apply to UCC or breach of contract claims. It cites several cases that have refused to apply the rule to claims involving the conversion of negotiable instruments under the UCC. See *Haddad's of Illinois*, 286 Ill. App. 3d at 1072; *Kidney Cancer Ass'n v. North Shore Community Bank & Trust Co.*, 373 Ill. App. 3d 396 (2007); and *Rodrigue*, 406 F.3d at 441. Those cases recognize the viability of the discovery rule, but note that the rule is only applicable in conversion of negotiable instruments cases when there are allegations of fraudulent concealment. Specifically, in *Haddad's of Illinois*, the court explained that under the UCC, liability of negotiable instruments under article 3 cannot be open-ended. Thus, while harsh, the discovery rule is inapplicable to section 3-118(g)'s statute of limitations absent fraud. See *Haddad's of*

9

*Illinois*, 286 Ill. App. 3d at 1075; 810 ILCS 5/3-118(g) (West 2006).

We decline to follow the holding in those cases for three reasons.  First, we find them distinguishable because they involve the conversion of negotiable instruments under article 3.  This is not an article 3 case.  This is a breach of contract case involving an agreement between a bank and the customer.  While both claims fall within the UCC, the commercial policies of certainty and finality of negotiable instruments that govern article 3 are not the same policies that influence the provisions of article 4.  See *Continental Casualty*, 329 Ill. App. 3d at 702; T. Quinn, Quinn's Uniform Commercial Code Commentary & Law Digest §§4-103, 4-401 (2d ed. 2001) (article 4 defines the bank-depositor relationship; bank cannot absolve itself from responsibility to act in good faith and exercise ordinary care).

Second, Illinois courts have utilized the discovery rule in UCC and breach of contract cases.  Although the majority of Illinois cases refuse to apply the discovery rule to conversion of negotiable instruments suits, the rule has been used to toll article 3's statute of limitations under circumstances of fraudulent concealment.  *Continental Casualty*, 329 Ill. App. 3d at 701-02.  The discovery rule has also been applied to article 2 of the UCC and breach of contract claims.  810 ILCS 5/2-725(2) (West 2006) (breach of warranty; discovery rule applies where warranty extends to future performance); *Zielinski v. Miller*, 277 Ill. App. 3d 735 (1995) (breach of implied warranties); *Swann & Weiskopf,*

10

*Ltd. v. Meed Associates, Inc.*, 304 Ill. App. 3d 970 (1999) (breach of contract; limitations period begins to run when plaintiff knows or reasonably should know of defect).

Third, fraudulent concealment by a third party tolls the statute of limitations where the person fraudulently concealing the cause of action is in privity or has an agency relationship with the defendant. *Serafin v. Seith*, 284 Ill. App. 3d 577 (1996). This case involves allegations of fraud committed by Jarred's mother, someone in a position of trust and the guardian of the FMB account. Because Ruth was the guardian of the savings account and Jarred resided with her, account statements were mailed to Ruth. Thus, while the victim of a conversion of negotiable instruments case is typically in the best position to easily and quickly detect the loss and take action (see *Haddad's of Illinois*, 286 Ill. App. 3d at 1073), it would have been difficult for Jarred to uncover any wrongdoing that may have been apparent in the account records (see *Continental Casualty*, 329 Ill. App. 3d at 702). In this case, the bank was in a better position than Jarred to enforce the depository agreement and monitor any unauthorized withdrawal of funds.

The discovery rule is intended to prevent the harsh consequences of the statute of limitations, particularly in cases where the relation between the injury and the alleged harmful conduct is obscure. *Rodrigue*, 406 F.3d at 444. The circumstances in this case compel its application. We therefore reverse the trial court's grant of summary judgment to FMB and remand for the trier of fact to determine when Jarred knew, or had reason to know,

11

that a cause of action might exist.

CONCLUSION

The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

JUSTICE SCHMIDT, dissenting:


Illinois first adopted the UCC in 1961.  1961 Ill. Laws 2101. In 1991, the legislature adopted the 1990 amendments to article 4, including the statute of limitations at issue in this case.  Pub. Act 87-582 (eff. Jan. 1, 1992) (adding 810 ILCS 5/4-111); 810 ILCS 5/4-111 (West 2006).  The 1990 amendments to article 4 of the UCC have been adopted by every state except New York and South Carolina (I spared you a string cite to the 48 state codes; they can be found at the following: http://www.law.cornell.edu/uniform/ucc.html#a4 (last visited Jan. 20, 2011)).

The majority acknowledges that the relevant statute of limitations is section 4-111 of the UCC.  Slip op. at 6.  There is no question that section 4-111, on its face, does not envision a discovery rule.  Neither our legislature nor the drafters of the UCC were unfamiliar with the discovery rule.  For example, article 4 of the UCC provides that a cause of action for breach of a transfer warranty "accrues when the claimant has reason to know of the breach."  810 ILCS 5/4-207(e) (West 2006).  Likewise, a cause of action for breach of a presentment warranty "accrues when the claimant has reason to know the breach."  810 ILCS 5/4-208(f) (West

2006). Had the drafters intended the discovery rule to apply to all article 4 claims, they would have included this discovery rule language in section 4-111. If, as the majority suggests, the language is hidden there somewhere, then the language cited in sections 4-207(e) and 4-208(f) is superfluous. I believe that the more reasonable construction is that the drafters and the legislature intended the discovery rule to apply only to breach of transfer warranties and presentment warranties. Otherwise, the legislature would have incorporated the discovery rule in section 4-111, as it did in sections 4-207 and 4-208.

Neither plaintiff nor the majority cites to a single decision applying the discovery rule to section 4-111 absent allegations of fraudulent concealment. My research has disclosed none. As far as I can tell, this court is the first in the nation to judicially modify section 4-111 with a discovery rule.

Rather than rewrite the UCC, I would exercise some judicial restraint. It seems clear that the majority is troubled by the effect enforcement of the statute has on what might be a valid claim. However, the enforcement of a statute of limitations, by its very nature, *always* has harsh consequences: it terminates the prosecution of a claim regardless of the underlying merits. There are reasons for statutes of limitations. The legislature adopted this statute of limitations. The job of this court, absent unconstitutionality, is to enforce the Code as written. I would affirm the trial court. I therefore dissent.