# Illinois Official Reports

## Appellate Court

---

### *Jackiewicz v. Village of Bolingbrook*, 2020 IL App (3d) 180346

---

| | |
|---|---|
| Appellate Court Caption | ROBERT JACKIEWICZ, LINNEA JACKIEWICZ, BETSY A. PAVICHEVICH, KEITH KILLIAN, KELLY SMITH, CHARLES AMPONSAH, ALICE AMPONSAH, JESUS ZEPEDA, ELISA ZEPEDA, ANDREW J. WHITNEY, LILLIANA MEJIA, JOSEPH PTAK, STEPHANIE PTAK, DAVID REISER, LYNNE REISER, DEREK NOBLE, TRACY NOBLE, BENNY ANDREWS, STEVE FELT, CATHERINE FELT, ROLAND DELA PENA, MARJORIE DELA PENA, STEVEN BECKLEY, NELLITA BECKLEY, ARTHUR BARNETT, GAIL BARNETT, PETER J. LOEB JR., KARLA LOEB, JEFFREY PIGORS, JOELLE PIGORS, SHITAL DOSHI, UTKARSH DOSHI, ANDREW TROY, CARYN TROY, and JONATHAN NARBETT, Plaintiffs, v. THE VILLAGE OF BOLINGBROOK, ILLINOIS, Defendant-Appellee (Charles Amponsah, Alice Amponsah, Jesus Zepeda, Elisa Zepeda, Derek Noble, and Tracy Noble, Plaintiffs-Appellants). |
| District & No. | Third District<br>No. 3-18-0346 |
| Filed | January 29, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 16-L-312; the Hon. Raymond E. Rossi, Judge, presiding. |
| Judgment | Vacated and remanded. |

| Counsel on Appeal | Michael I. Leonard and Madelaine M. Thomas, of LeonardMeyer LLP, of Chicago, for appellants. |
| | |
| | Kenneth M. Florey and M. Neal Smith, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Bolingbrook, for appellee. |

| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justice O'Brien concurred in the judgment and opinion.<br>Justice Holdridge concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     Appellants, Charles and Alice Amponsah, Jesus and Elisa Zepeda, and Derek and Tracy Noble (collectively, Property Owners), among others, argued appellee, the Village of Bolingbrook, Illinois (Village), by operating Clow International Airport (Airport), effectuated an inverse condemnation of private property rights for public use without just compensation. The trial court granted the Village's motion for partial summary judgment, citing the statute of limitations under the Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2016)). The Property Owners appeal under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 2                                I. BACKGROUND

¶ 3     As discussed below, this case arises from the trial court's grant of partial summary judgment in favor of the Village under the applicable statute of limitations. However, to provide context to our judgment, our analysis of the trial court's decision will be preceded by a detailed discussion of the facts and arguments underlying the motion for partial summary judgment.

¶ 4     The Property Owners have lived in their homes near the Airport since the mid-1990s and mid-2000s. In 2015, the Village, which is the current owner and operator of the Airport, notified the Property Owners of a project to begin renovations to its runway. Necessary federal funds for the renovations were conditioned on the Village meeting certain design and safety criteria for the runway. Further, the renovations included raising the elevation of the runway by 7 to 8 feet, increasing the width of the runway from 50 to 75 feet, shortening the length of the runway by 2 feet, and shifting the runway 75 feet to the west. The renovations occurred on property already owned by the Airport and the Village and were preceded by reviews of the Aeronautics Division of the Illinois Department of Transportation and the Federal Aviation Administration.

¶ 5     According to the Property Owners, the Village knew, despite assurances to the contrary, that the renovated runway would dramatically and negatively impact their quality of life and decrease their property values. Moreover, the Village allegedly knew that the renovated runway necessitated just compensation for the taking of the air rights above the Property Owners' land. In the summer and fall of 2015, the Property Owners stated the Village made

low ball offers for their air rights, which were accompanied by waivers of rights and bore "no legitimate relation to the value of [the Property Owners'] air rights" or to the taking. The Property Owners claimed the Village failed and refused to provide just compensation.

¶ 6    In December 2015, the Village opened its renovated runway. The Property Owners alleged that, as expected, the runway caused a substantial increase in the frequency of low-flying aircraft and an invasion of the airspace above their land. Further, the Property Owners stated the low-flying aircrafts caused an increase in noise levels, fear and distress, damage to property from vibrations, and an inability to use or enjoy their homes.

¶ 7    On April 25, 2016, the Property Owners filed a three count complaint, alleging, consistent with the above, inverse condemnation under the United States and Illinois Constitutions. See U.S. Const., amend. V ("[N]or shall private property be taken for public use, without just compensation."); Ill. Const. 1970, art. I, § 15 ("Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law."). On January 6, 2018, following unsuccessful motions to dismiss and strike the complaint, the Village filed a motion for partial summary judgment and statement of material facts, directed at the Property Owners.

¶ 8    In its motion for partial summary judgment, the Village made three arguments. First, the Village argued the Property Owners presented no evidence of a taking based on overflights. The Village pointed out that the facts did not demonstrate flights into the Airport were "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land."

¶ 9    In support of this observation, the Village attached to its statement of material facts an affidavit prepared by the current manager and former owner of the Airport, Joseph De Paulo. The De Paulo affidavit recited fuel sales reports and Airport leases to show no change in the frequency or type of aircraft had occurred since the runway renovations.[1] De Paulo's affidavit stated the Airport operated in "substantially the same manner and capacity" as it did before the runway renovations. The Airport does not keep records logging the number of daily arriving and departing flights. The Village also attached the affidavit of Lucas Rickelman, the current director of public services and development for the Village. Rickelman's affidavit concludes the subject residential properties are "farther away from the [Airport] runway than before the renovations."

¶ 10    Second, the Village argued summary judgment was warranted because appellants' complaint was not timely under section 13-205 of the Code. In support, the Village pointed out that the facts reveal the Airport has operated with essentially the same capacity and aircrafts since the 1970s and that the Property Owners' homes were not built until the mid-1990s. Therefore, since the Property Owners made only conclusory claims regarding the Airport's purported increased capacity from the runway renovations, the Property Owners are "20+ years too late in filing" their complaint. Under this "no change" posture, the Village argued, "simply because [the Airport] was renovated, that didn't restart the statute of limitations." Rather, the Property Owners needed to show "conditions that are different after the renovations."

¶ 11    Third, for purposes of summary judgment, the Village argued that the Property Owners failed to use concrete data and made conclusory statements to show how the overflights diminished their properties' fair market value. The Village took issue with the fact that the

---

[1]According to De Paulo, leases are an indication of the aircrafts that are "based" at the Airport.

Property Owners' expert report was not completed by a licensed appraiser and failed to consider value changes to the Property Owners' individual properties. According to the Village, the only certified appraisal provided in discovery, prepared for appellant Derek Noble on November 18, 2016, revealed "air traffic [at the Airport] is not constant and of small aircraft."[2] Thus, "[t]he proximity to the airport will not have an adverse effect [on] the subjects marketability or the neighboring properties" and the "airport is typical for the neighborhood and well accepted."

¶ 12    In response to the motion for partial summary judgment, the Property Owners first addressed the contention that there was insufficient evidence of a taking by overflights. At a minimum, the Property Owners believed they raised genuine issues of material fact, as their affidavits demonstrated aircraft fly above their homes and disrupt their sleep, shake their homes, cause distress, and prevent the enjoyment and use of their properties. Particularly, the affidavit of Derek Noble stated "the frequency of airplanes in the area has increased, including much larger planes than before the Runway opened." There is also "increased noise and vibrations resulting from this new air traffic, regularly interrupting our sleep when large planes fly over our house." The shaking "did not exist prior to the opening of the Runway."

¶ 13    Likewise, the Property Owners attached Jesus Zepeda's affidavit, which stated "[t]he use of the Runway has substantially increased the flow of aircraft directly above our home[,] *** regularly fly[ing] above our property at extremely low heights (50 to 100 feet off the ground, and lower); dramatically increas[ing] noise levels; and caus[ing] fear to us arising out of these low flying aircraft." After the runway renovations, Zepeda observed increases by at least 50% in the frequency of airplanes above his property. Zepeda observed larger planes and increases in noise and vibrations and developed a "constant uneasy feeling *** like a stress disorder" from the volume, sound, and proximity of the aircraft.

¶ 14    The affidavit of Alice Amponsah contained substantially the same observations as her neighbor, Mr. Zepeda. Answers consistent with these affidavits were also given in the Property Owners' first set of interrogatories, along with the amount believed to be appropriate to compensate the Property Owners for the loss in value of his or her property.

¶ 15    The Property Owners also argued De Paulo gave conflicting accounts of his knowledge pertaining to increased air traffic at the Airport. For example, the Property Owners state, in De Paulo's deposition, "he confessed *** [to] having no knowledge whatsoever of the actual conditions on the ground with respect to the [Property Owners], the conditions and impacts within or without the [Property Owners'] homes as a result, or even the extent of airway traffic at [the Airport]. He testified *** he would just be guessing at any impact on [the Property Owners'] homes as a result of the new runway." The Property Owners argue this testimony is inconsistent with the information contained in De Paulo's affidavit, dated January 8, 2018.

¶ 16    Next, the Property Owners responded to the argument regarding the statute of limitations by stating, consistent with their sworn testimony, the physical invasion from overflights accrued after the 2015 runway renovations. Since the lawsuit was filed on April 25, 2016, the Property Owners argued that they were within the five-year limitations period. The Property Owners explained there was no allegation regarding overflights before the 2015 runway renovations were completed, but that "[t]hey are saying it's changed because of the shift of the new runway, and they testified to how it's different than before."

_____

[2]The appraisal for appellant Derek Noble preceded his loan approval by a mortgage lender.

¶ 17     Lastly, the Property Owners responded that the Village's claim that there was no evidence of diminished fair market property values was contrary to the record. Initially, the Property Owners argued the Village's reliance on Derek Noble's appraisal was improper, as that document was unfounded and not self-authenticating, replete with inadmissible hearsay, and did not provide property values following the 2015 runway renovations.

¶ 18     Moreover, the Property Owners argued their affidavits and interrogatories contained unrebutted evidence of their damages, and scrutiny of their expert report should be for the jury. The expert report was conducted by Jeffrey S. Rothbart, a licensed Illinois realtor and attorney. Mr. Rothbart concluded "[p]roperties within the [Property Owners'] [z]one are highly impacted by the increased air traffic at [the Airport]." In particular, Mr. Rothbart stated "it is reasonable and logical that since 2015 the average home in the [Property Owners'] [z]one decreased in value by over $13,000," despite the average sales price of a single family home in the Village of Bolingbrook "increas[ing] by $24,192." Further, Mr. Rothbart ultimately concluded that "[b]ut for the [Airport] expansion, homes in the [Property Owners'] [z]one would have been worth approximately $37,805 *** more than the current valuation."

¶ 19     On May 18, 2018, following a hearing, the trial court entered an order announcing "the applicable statute of limitations has expired and thus bars [the Property Owners'] action for the reasons stated in open court." In court, the trial court and the parties had the following exchange:

"THE COURT: All right. There is no inverse condemnation, and *** this matter is barred by the statute of limitations. I don't—by reason of the statute of limitations' opinion, I don't need to and won't make comment as to the third prong, that being damages.

[THE VILLAGE'S COUNSEL]: Makes sense.

[THE PROPERTY OWNERS' COUNSEL]: Okay. So for the order, Judge, no taking and it's barred by statute of limitations.

THE COURT: You know, I think I prefer—

[THE PROPERTY OWNERS' COUNSEL]: Just barred?

THE COURT: Just barred by the statute of limitations."

Since the motion for partial summary judgment was directed only at the Property Owners, the trial court stated, "there is no just reason to delay enforcement or appeal of this order." See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The Property Owners filed a notice of appeal on June 6, 2018.

¶ 20                                         II. ANALYSIS
¶ 21                            A. Summary Judgment Standard
¶ 22     On appeal, the Property Owners challenge the trial court's grant of the Village's motion for partial summary judgment. Motions for summary judgment are a drastic means of disposing of litigation. *Newell v. Newell*, 406 Ill. App. 3d 1046, 1049 (2011); accord *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). It is well established that these motions are granted only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Newell*, 406 Ill. App. 3d at 1049; 735 ILCS 5/2-1005(c) (West 2016). Further, Illinois Supreme

- 5 -

Court Rule 191(a) (eff. Jan. 4, 2013), which governs affidavits supporting and opposing motions for summary judgment, is satisfied if "it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial." (Internal quotation marks omitted.) *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 22.

¶ 23　　Accordingly, the right of a moving party to succeed on a motion for summary judgment must be clear and free of doubt. *Newell*, 406 Ill. App. 3d at 1049; *Jackson Jordan, Inc.*, 158 Ill. 2d at 249. The record is construed strictly against the movant and liberally for the nonmovant, and the trial court's ruling is reviewed *de novo*. *Newell*, 406 Ill. App. 3d at 1049.

¶ 24　　　　　　　　　　　　　B. Takings by Avigation Easement

¶ 25　　The law of avigation easements has been discussed sparsely in the courts of our state. However, avigation easements have been addressed thoroughly by the Supreme Court of the United States, as well as by our counterparts in the federal circuit courts of appeal. As a result, we find it necessary to consider in detail the guidance provided in the cases from those respected courts.

¶ 26　　First, in *United States v. Causby*, 328 U.S. 256 (1946), the Supreme Court explored how avigation easements can result in takings of private property. In particular, the Supreme Court stated a taking under the fifth amendment to the United States Constitution can occur when overflights render private property uninhabitable. *Id.* at 261. In this context, it was said that the landowner's loss is complete if the frequency and altitude of the flights eliminate all uses of the land. *Id.* The high court reasoned that, although the taking is only an easement, such an easement, if permanent and not temporary, is the equivalent of "complete dominion and control over the surface of the land" by the government. *Id.* at 261-62. The landowner's right to possess and exploit the land, *i.e.*, his or her beneficial ownership, is destroyed. *Id.* at 262.

¶ 27　　Further, the Supreme Court stated that, under the circumstances of *Causby*, the fact that the "enjoyment and use of the land [was] not completely destroyed" did not "seem *** to be controlling." *Id.* Instead, the Supreme Court acknowledged an airplane's path of glide may reduce valuable uses of the land without completely destroying the landowner's beneficial ownership.[3] *Id.* Some value in the land remains, but "the use of the airspace immediately above the land [limits] the utility of the land and cause[s] a diminution in its value." *Id.* Therefore, because the airspace at such an altitude is "so close to the land" as to cause "continuous invasions [affecting] the use of the surface," a landowner has a claim for invasions to the airspace in the same way he or she has a claim for invasions to the surface.[4] *Id.* at 265.

¶ 28　　Ultimately, with these principles in mind, the Supreme Court stated flights above private land constitute a taking only where they are "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *Id.* at 266. In resolving

---

[3]In particular, the Supreme Court illustrated, "[t]he path of glide for airplanes might reduce a valuable factory site to grazing land, an orchard to a vegetable patch, a residential section to a wheat field. Some value would remain. But the use of the airspace immediately above the land would limit the utility of the land and cause a diminution in its value." *Causby*, 328 U.S. at 262.

[4]"[I]t is the character of the invasion, not the amount of [resulting] damage ***, so long as the damage is substantial, that determines *** whether [there was] a taking." (Internal quotation marks omitted.) *Causby*, 328 U.S. at 266.

- 6 -

*Causby*, the Supreme Court stated it could refrain from speculating on this question because the lower court's findings established that low-level flights directly and immediately caused a diminution in Causby's property value. *Id.* at 266-67. Thus, a servitude was imposed on the land. *Id.* at 267.

¶ 29 Sixteen years after *Causby*, the Supreme Court, in *Griggs v. Allegheny County*, 369 U.S. 84 (1962), again addressed avigation easements. Similar to the case on appeal, the plaintiff brought, under the fifth and fourteenth amendments to the United States Constitution, an action against a locality for its ownership and operation of an airport. *Id.* at 84-85.

¶ 30 As in this case, the plaintiff in *Griggs* alleged the noise, vibrations, and fear from overflights interfered with the use and enjoyment of their property, amounting to a taking under *Causby*. *Id.* at 87-88. The "[r]egular and almost continuous daily flights, often several minutes apart," were close to the plaintiff's residence, made it impossible to talk or sleep, and led to windows rattling and plaster falling from the walls and ceilings. (Internal quotation marks omitted.) *Id.* at 87. There was also an admission from the spokesman of the Airlines Pilot Association that "[i]f we had engine failure[,] we would have no course but to plow into your house." (Internal quotation marks omitted.) *Id.* As a result, the Supreme Court held the airplanes landing and taking off from the airport, which made the plaintiff's property "undesirable and unbearable" for residential use, was a taking of airspace by Allegheny County under *Causby*. *Id.* at 87, 90-91; see also *Argent v. United States*, 124 F.3d 1277, 1282 (Fed. Cir. 1997) (recognizing "[w]ith the increased prominence of jet airplanes, noise and vibrations have replaced physical encumbrance as the primary complaint of claimants seeking compensation").

¶ 31 Importantly, our supreme court has stated that the Illinois and United States Constitutions operate in lockstep on the issue of what constitutes a taking. *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶¶ 13-15. As a result, United States Supreme Court decisions inform the determination of whether a taking has been alleged under the Illinois Constitution. *Id.* ¶ 16. Thus, it is noteworthy that our court's districts have recognized that, under *Causby* and *Griggs*, a compensable taking of private property can result when the noise, disruption, or frequency of overflights directly and immediately interfere with the use or enjoyment of property. See *Pineschi v. Rock River Water Reclamation District*, 346 Ill. App. 3d 719, 727 (2004) ("[c]ompensation is required when the noise and disruption from airplane overflights render property essentially unusable"); *Bryski v. City of Chicago*, 148 Ill. App. 3d 556, 558-59 (1986) (stating, in *Causby*, "the noise of low and frequent aircraft flying immediately above an individual's property operates to directly and immediately interfere with the use and enjoyment of the land," constituting "a compensable taking," with "inverse condemnation [as] the proper remedy for the injury"); *La Salle National Bank v. County of Cook*, 34 Ill. App. 3d 264, 276 (1975) (stating, in *Causby* and *Griggs*, "frequent overflights of the *** plaintiffs' properties were deemed to so drastically deprive the plaintiffs of the beneficial use of their properties that an easement was created," taking plaintiffs' properties).

¶ 32 Further, *Argent* is particularly important to the case before our court. In that case, the Federal Circuit recognized overflights can create a second taking or expand the scope of an existing avigation easement. *Argent*, 124 F.3d at 1285-86. Specifically, a second taking may be effectuated, or the scope of an existing avigation easement may be expanded, by, among other things, "increasing the number of flights" or "introducing noisier aircraft" at the airport. *Id.* at 1285. While *Argent* is not binding precedent, we believe, under the facts and procedural

posture presented, this point of law is both instructive and helpful to resolving the issues on appeal.[5]

¶ 33                                    C. Statute of Limitations

¶ 34    In this case, the trial court based its order granting the Village's motion for partial summary judgment on the statute of limitations contained in section 13-205 of the Code, which states "actions *** to recover damages for an injury done to property, real or personal, *** and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2016). Thus, the trial court believed any taking due to overflights began more than five years before April 25, 2016, when the Property Owners filed their complaint. As a result, the question for our court is whether genuine issues of material fact exist related to when the Property Owners' air rights were taken, *i.e.*, whether the 2015 runway renovations caused a second taking or an expansion of an existing aviation easement that reset the statute of limitations. See *id.*; *Argent*, 124 F.3d at 1285-86.

¶ 35    On this question, the Property Owners claim their cause of action was timely because their affidavits indicated a taking occurred after the 2015 runway renovations or, in the alternative, at least raised genuine issues of material fact concerning that alleged taking. The Property Owners' affidavits stated that the frequency, size, height, and noise of aircrafts using the Airport since the 2015 runway renovations prevented the enjoyment and use of their properties by disrupting their sleep, vibrating their homes, and causing distress.

¶ 36    In response, the Village argues that there is no evidence showing the Airport's operations and capacities expanded or increased after the 2015 runway renovations. Rather, De Paulo stated in his affidavit and deposition that the Airport operates in "substantially the same manner and capacity" as it did before the runway renovations, and neither fuel sales nor leases indicate a change in the frequency or type of aircraft using the Airport. According to De Paulo, leases are an indication of the number of aircrafts that are "based" at the Airport.

¶ 37    Here, genuine issues of material fact exist between the Property Owners' affidavits and the affidavit and deposition of De Paulo.[6]  Initially, the Property Owners stated that they personally observed lower overflights and increases in the frequency, size, and noise levels of the aircrafts using the Airport. The Village's evidence included De Paulo's opinion, based on his general observations, fuel sales reports, and review of leases, that there were not significant changes to the Airport's operations or capacities. However, the fuel sales reports and leases may not tell the whole story. The record suggests some aircrafts could land and then take off again without refueling or having a lease agreement with the Airport. Further, De Paulo stated at his

---

[5]The court in *Argent* held that the lower court's summary judgment order was premature. See *Argent*, 124 F.3d at 1287. Although there was contradicting evidence on the plaintiff's contentions as to the scope of the defendant's activity and the relative noise levels, it was improper to choose one party's version of the facts on summary judgment. *Id.* at 1286-87. The plaintiffs presented sufficient evidence to raise a genuine issue of material fact. *Id.* at 1287.

[6]The parties' disagreement as to De Paulo's testimony derives, rather simply, from how the parties seek to use that testimony. De Paulo stated he had no knowledge of the impact felt by the Property Owners from the 2015 runway renovations but gave observations on the operations of the Airport in his capacity as airport manager. Specifically, he testified that, based upon fuel sales reports and leases, he believed the frequency of aircraft traffic stayed the same following the 2015 runway renovations.

deposition that he lacked knowledge to give an opinion on the Property Owners' claims of increased noise levels, vibrations to their homes, or distress. In the absence of indisputable evidence, such as a flight log, our court is left with the parties' equally indefinite and conflicting personal accounts concerning the frequency, size, and flight patterns of aircrafts using the Airport since the 2015 runway renovations. As a result, we conclude there are genuine issues of material fact that must be resolved in the trial court.

¶ 38     In light of the parties' extensive arguments on appeal, we also find it necessary to comment on the issue of damages, namely, the potential diminution in value of the Property Owners' properties. On this issue, the trial court intentionally remained silent, stating "I don't need to and won't make comment as to the third prong, that being damages."

¶ 39     Based on the trial court's restraint, we are reluctant to delve too deeply into the parties' arguments related to damages. However, it is appropriate to observe that, based solely on the Village's pleadings and attachments, there is a genuine issue of material fact concerning the amount of damages, if any, suffered by the Property Owners. Derek Noble's appraisal states "the airport will not have an adverse effect [on] the subjects marketability or the neighboring properties." Conversely, Mr. Rothbart's expert report concludes "[b]ut for the [Airport] expansion, homes in the [Property Owners'] [z]one would have been worth approximately $37,805 *** more than the current valuation."[7] As a result, we conclude the inherent conflicts between and the admissibility of these documents must be resolved in the trial court.

¶ 40     In conclusion, there are genuine issues of material fact concerning whether the Village's 2015 runway renovations created a second taking or expanded an already existing avigation easement and whether there were resulting damages suffered by the Property Owners. See *Argent*, 124 F.3d at 1285-86. Thus, we end our inquiry by vacating the trial court's order granting the Village's partial motion for summary judgment and remanding the matter to the trial court for proceedings consistent with this opinion.

¶ 41                               III. CONCLUSION
¶ 42     The judgment of the circuit court of Will County is vacated and remanded.

¶ 43     Vacated and remanded.


¶ 44     JUSTICE HOLDRIDGE, concurring in part and dissenting in part:
¶ 45     I agree with the majority that there are genuine issues of fact as to whether the Village's 2015 runway renovations constituted a second taking or expanded an already existing avigation

---

[7]In the trial court, the parties argued over whether Mr. Rothbart's expert report, which the Village itself attached to its statement of material facts for purposes of summary judgment, must be supported by an affidavit under Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). The Property Owners stated, "[i]f the Court's basis to reject [the expert report] is to say we didn't attach a piece of paper to it saying this is a true and correct copy of my report, we'd ask leave to do that because that's a new argument that was never raised in their brief." Despite its awareness of this issue, the trial court intentionally chose not to rule on the issue of damages. Therefore, we are of the opinion that the admissibility of documents purporting to prove damages should first be decided in the trial court, not in our court on summary judgment.

easement. I therefore join the majority's conclusion that the trial court erred by granting summary judgment on the basis of the statute of limitations.

¶ 46    However, I dissent from the majority's judgment because I believe that the trial court's award of summary judgment to the Village should be affirmed on another basis. Specifically, the plaintiffs failed to present any admissible evidence that the market value of their homes was diminished by the Village's operation of the airport after the 2015 renovations. Without such evidence, the plaintiffs cannot prove that they suffered compensable damages as a result of any inverse condemnation of their properties. See *Lake County Forest Preserve District v. Frecska*, 85 Ill. App. 3d 610, 616 (1980) (ruling that, in cases alleging damages as the result of an easement imposed by a government taking, "the measure of damages *** is the depreciation in [the property's] fair market value *** caused by its subjection to the condemnor's superior right to use the land"); see also *Peoples Gas Light & Coke Co. v. Buckles*, 24 Ill. 2d 520, 532-33 (1962); *Persyn v. United States*, 34 Fed. Cl. 187, 207-08 (1995) (holding that, in a case alleging a taking by avigation easement as the result of increased air traffic over the plaintiff's property, "a significant depreciation in the market value of the property as a direct result of the overflights is *** a prerequisite to recovery"; thus, "even if plaintiffs had proven that aircraft flying over the subject parcels regularly intruded into protected airspace, there can be no finding of an additional taking in the absence of evidence that" the increased overflights at issue "substantially increased the burden on the subject parcels *and resulted in a significant drop in market value*" (emphasis added and internal quotation marks omitted)); *Long v. City of Charlotte*, 293 S.E.2d 101, 110 (N.C. 1982) (ruling that no taking occurs unless the overflights amount to a material interference with the use and enjoyment of property "such that there is substantial diminution in fair market value" (internal quotation marks omitted)); *Thornburg v. Port of Portland*, 415 P.2d 750, 751-52 (Or. 1966) (measuring substantial interference with the plaintiff's use and enjoyment of his property by the measurable decline in the property's fair market value); *Sarasota-Manatee Airport Authority v. Icard*, 567 So. 2d 937, 938-39 (Fla. Dist. Ct. App. 1990) (reversing summary judgment for plaintiff in inverse condemnation case where the parties disputed whether overflights diminished the fair market value of the plaintiffs' property and remanding to "determine whether there was substantial market value damage to constitute a taking"); *Lengen v. United States*, 100 Fed. Cl. 317, 336 (2011) ("In addition to demonstrating a change in the flight paths of existing aircraft, a substantial increase in the number of overflights, or the introduction of new aircraft, a plaintiff must prove that there has been an increased interference with the use and enjoyment of the property *and that the new activities have resulted in an additional diminution in the value of the property ***.*" (Emphasis added.)).

¶ 47    The majority declines to decide whether the plaintiffs presented sufficient evidence of damages to avoid summary judgment because the trial court refrained from addressing that issue. *Supra* ¶¶ 38-39. However, this court is not bound by the trial court's reasoning and we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on that basis. *In re Estate of Sperry*, 2017 IL App (3d) 150703, ¶ 19 n.4; see also *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports"). Thus, in my view, we can address the issue of damages and we should affirm summary judgment on that basis.

¶ 48    A defendant who moves for summary judgment can meet its initial burden of production by establishing that the defendant lacks sufficient evidence to prove an essential element of the cause of action. *Home Healthcare of Illinois, Inc. v. Jesk*, 2017 IL App (1st) 162482, ¶ 51. Where a defendant meets its initial burden of production in that manner, the burden shifts to the plaintiff to show some factual basis to support the elements of his claim or to defeat the defense. *Id.*

¶ 49    Here, the plaintiffs presented the following evidence of damages: (1) the plaintiffs' affidavits and interrogatory responses in which the plaintiffs averred that the 2015 airport runway renovations led to increased air traffic over their properties, which diminished the plaintiffs' use and enjoyment of their properties; and (2) an expert report prepared by Jeffrey Rothbart, a licensed Illinois realtor and attorney, in which Mr. Rothbart opined that, "but for the [airport] expansion, homes in the [property owners'] [z]one would have been worth approximately $37,805 *** more than the current valuation." Mr. Rothbart's opinion was neither contained in a deposition nor supported by a sworn affidavit in compliance with section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2016)) and Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) and is therefore inadmissible in opposition to the Village's motion for summary judgment. See *Geelan v. City of Kankakee*, 239 Ill. App. 3d 528, 532 (1992) (proposed expert's testimony was not admissible where, *inter alia*, it "was not properly presented to the trial court in the form of a deposition or affidavit" (emphasis omitted)); see also *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335-36 (2002) ("[a]n affidavit submitted in the summary judgment context serves as a substitute for testimony at trial," and it is therefore "necessary that there be strict compliance with Rule 191(a) to insure that trial judges are presented with valid evidentiary facts upon which to base a decision" (internal quotation marks omitted)). Moreover, Mr. Rothbart did not render an opinion as to the actual market value of any of the plaintiff's properties, either before or after the airport expansion occurred in 2015. Although he rendered a general opinion regarding the market value of each of the homes located in the zone near the airport as compared to other nearby homes further from the airport, his opinion was not based upon a consideration of the plaintiffs' individual properties or the affect that the alleged increased air traffic had upon the fair market value of those specific properties. The only such evidence contained in the record was an appraisal of plaintiff Noble's property in which the appraiser opined that "the airport will not have an adverse effect [on] the subject's marketability or the neighboring properties."[8] Thus, even if Mr. Rothbart's opinion were admissible, which it is not, it would not rebut the appraiser's report or provide evidence sufficient to forestall summary judgment.[9]

---

[8]Although the plaintiffs argued before the trial court that this appraisal was inadmissible, they have not raised that argument on appeal.

[9]The majority opines that the admissibility of Mr. Rothbart's opinion should be determined by the trial court because, although the parties disputed whether Mr. Rothbart's opinion had to be supported by a Rule 191(a) affidavit, and although the plaintiffs' counsel asked for leave to file such an affidavit, the trial court "intentionally chose not to rule on the issue of damages." *Supra* ¶ 39 n.7. I respectfully disagree. Under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we have the authority to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief." This includes the authority to enter an order deciding an issue not addressed by the parties or the trial court and even to decide the case on that basis. *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16. Here, the Village correctly noted that Mr. Rothbart's opinion

¶ 50    That leaves the plaintiffs' testimony regarding their alleged loss of use and enjoyment of their properties as the plaintiffs' only evidence of damages. That testimony, standing alone, does not constitute evidence that the fair market value of the plaintiffs' homes has diminished as a result of the Village's alleged taking, particularly in light of an unrebutted appraiser's report to the contrary.

¶ 51    Because the plaintiffs failed to present any admissible evidence that the alleged taking diminished the market value of their properties, and because the only evidence of record that speaks to that issue supports a contrary inference, I would affirm the trial court's grant of summary judgment in favor of the Village.

---

was not supported by deposition or affidavit. The trial court should have ruled the opinion inadmissible on that basis, and we have the discretionary authority to correct the trial court's error by entering an order to that effect. In any event, as noted above, even if Mr. Rothbart's opinion were deemed admissible, it would not rebut the appraiser's report or provide evidence sufficient to withstand summary judgment in the Village's favor. Because we review the trial court's judgment and not its rationale, we may affirm the trial court's judgment on any basis supported by the record, even if the trial court did not base its decision on that basis. *In re Estate of Sperry*, 2017 IL App (3d) 150703, ¶ 19 n.4. Accordingly, we can and, in my view, we should affirm the trial court's grant of summary judgment because the plaintiffs failed to present evidence of damages.